HOME GUARANTY ABSTRACT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9574. Promulgated March 26, 1947.

*A. E. Brooks, Esq.,* and *Thorp A. Andrews, Esq.,* for the petitioner.
*Stanley B. Anderson, Esq.,* for the respondent.

**OPINION.**

DISNEY, *Judge*: Under the above facts, it is the petitioner's contention that its equity invested capital (for the purpose of determining the excess profits taxes herein involved) was on January 1, 1942, $44,776.89, representing $40,000 capital stock and $4,776.89 earnings and profits accumulated on that date; and that on January 1, 1943, the figure was $46,785.50, representing accumulated earnings and profits of $6,785.50 and the $40,000 capital stock.

In the alternative, petitioner contends the equity invested capital for 1942 was not less than $32,876.89, and for 1943, $33,885.50, representing amounts invested prior to 1913 in permanent records, cabinets, furniture, and equipment, all in the amount of $28,100, to be added to the accumulated earnings and profits of $4,776.89 on January 1, 1942, and $6,785.50 on January 1, 1943. Petitioner also says that excess profits tax credit based on income is $993.18, and the parties stipulate that amount as proper, and the petitioner entitled thereto, if that amount exceeds excess profits credit as determined by the Commissioner. The petitioner, as to the delinquency penalty, contends that there was not neglect, and that it acted in good faith, with reasonable cause, hence should not pay a penalty.

We have found as a fact that the original capital of $15,000 was paid in. The respondent argues, in effect, that the evidence on the point is inconclusive and not positive, and the criticism is not altogether without foundation, but the evidence was positive in figures and was not contradicted, and we are convinced that, taken as a whole, it represents the factual situation, and that the $15,000 was paid in for stock. We therefore are of the opinion that the $15,000 original capital stock, together with the amounts of accumulated earnings and profits, should be reflected in the excess profits tax credits for the two years involved.

This leaves for consideration whether credit should also be based on $25,000 as addition to capital stock at the time of amendment of charter in 1920. In our opinion it should not. The statute here involved is section 718 (a) (1), (2), and (4), of the Internal Revenue Code.[1] Thereunder, equity invested capital must be either money or property paid in, so far as just here concerned. The money originally paid in, $15,000, for stock, we have above considered as within the statute. The affidavit attached to the charter amendment shows on its face that the $25,000 "subscriptions were paid as follows: By the increase in the Abstract books, Abstract records, and the prop-

---

[1] SEC. 718. EQUITY INVESTED CAPITAL.

(a) DEFINITION.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b)—

(1) MONEY PAID IN.—Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

(2) PROPERTY PAID IN.—Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. If the property was disposed of before such taxable year, such basis shall be determined under the law applicable to the year of disposition, but without regard to the value of the property as of March 1, 1913. If the property was disposed of before March 1, 1913, its basis shall be considered to be its fair market value at the time paid in. If the unadjusted basis of the property is a substituted basis, such basis shall be adjusted, with respect to the period before the property was paid in, by an amount equal to the adjustments proper under section 115 (1) for determining earnings and profits.

    *         *         *         *         *         *         *

(4) EARNINGS AND PROFITS AT BEGINNING OF YEAR.—The accumulated earnings and profits as of the beginning of such taxable year.

erties * * * and the value thereof from $15,000.00, which was its value at the date of its incorporation, to $40,000 at the present time." The petitioner cites no authority, and we discover none, basing equity invested capital upon mere increase in value of the original investment. In *LaBelle Iron Works* v. *United States*, 256 U. S. 377, the Supreme Court, construing the Revenue Act of October 3, 1917, Title 2, section 207, relating to excess profits tax, held that "invested capital" did not include appreciation in value of property after acquisition. Though the statute is not the same in text as that here involved, we think the same principle applies here. We hold that any such mere appreciation in value does not demonstrate equity invested capital. The same is true of evidence as to offer to sell for $25,000 cash and $25,000 stock in 1921, and sale for $60,000 in 1944. Not only does the offer to sell in 1920 establish nothing of evidential value, particularly considering the fact that $25,000 was to be paid in stock of a proposed company, but, as to both that offer and the actual sale in 1944, it is apparent, and we hold, that sale prices do not represent investment.

The petitioner suggests that the addition of books, records, card indexes, and equipment purchased, or developed at considerable expense after 1902 and prior to 1913, represents capital. But accumulated earnings and profits to be included are those at the beginning of the year involved, and these have been stipulated, and were allowed in the computation of deficiency. Nothing in the statute indicates that the language, "The accumulated earnings and profits as of the beginning of such taxable year," does not encompass earnings and profits accumulated prior to 1913. The simple stipulation presented to us here, and incorporated verbatim in our findings, does not eliminate accumulations prior to 1913, and we see no reason why it should. No authority is cited, nor found by us, so requiring. We consider pre–1913 earnings as covered by the stipulated figures as of the beginning of 1942, i. e., $4,776.89. We hold that the petitioner's equity invested capital is not to be computed upon the basis of property values above the $15,000 original stock subscriptions.

The petitioner urges deduction of amounts paid for club dues for its officers belonging to Kiwanis, Rotary, and Fort Worth Clubs. Showing of business gotten was made only as to Kiwanis Club. The dues which were disallowed in the deficiency notice were for "Club dues" in an aggregate amount. No proof was made of the amount of dues paid to any particular club. No proof was made that the clubs were joined for business reasons, or that they were primarily used for that purpose, or, except as already stated, resulted in any particular business. Though deduction of dues has been allowed under some circumstances, *Johnson* v. *United States*, 45 Fed. Supp. 377; reversed without mention of the point, 135 Fed. (2d) 125 (wherein "purely"

business purpose and obtaining of particular business was shown), on the record before us we think the denial of deduction must be sustained for indefiniteness of proof.

There remains for consideration the question of whether the petitioner is liable for a penalty for failure to file timely excess profits tax return for 1942. Section 291 (a) of the Internal Revenue Code [2] controls. It is not denied that the return was not filed within the statutory time, but petitioner's contention is that the matter was left to its auditor, and that there was not neglect and that it acted in good faith, with reasonable cause, the net income shown on the income tax return for the year 1942 being less than $5,000. No advice of counsel is shown. The auditor may have merely forgotten to file the return. Obviously, the showing made is insufficient to show reasonable cause. Mere leaving the matter to the auditor proves nothing in the way of reasonable cause. In the cases cited by the petitioner, there was finding of reasonable cause; but in *P. Dougherty Co.*, 5 T. C. 791, we had before us, in effect, the contention here raised, that is, that the petitioner did not believe it had any excess profits net income. Here, though the petitioner does not refer to section 729 (b) (2) of the Internal Revenue Code, which, in the form applicable to 1942, provided that no return be filed if excess profits net income is not greater than $5,000, we presume, from the reference to income less than $5,000, that the intention is to rely thereon. It was relied on in the *Dougherty* case, but, citing certain cases to the effect that mistaken belief that no return was required does not demonstrate reasonable cause for failure to file return, we held the penalty properly applied. That case, with those cited therein, requires the same holding here, and we find no error in the addition of the penalty.

*Decision will be entered under Rule 50.*

---

[2] SEC. 291. FAILURE TO FILE RETURN.

(a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. * * *