Alexander Milne, Jr. v. Commissioner.
Milne v. Commissioner
Docket No. 18036.
United States Tax Court
1949 Tax Ct. Memo LEXIS 65; 8 T.C.M. (CCH) 858; T.C.M. (RIA) 49231; September 29, 1949
*65 Alfred Cerceo, Esq., for the petitioner. Lester H. Salter, Esq., and Maurice Bush, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: By this proceeding petitioner challenges respondent's determination of deficiencies in income tax for the years 1944 and 1945 in the amounts of $698.11 and 618.90, respectively. The deficiencies result from respondent's action in disallowing amounts claimed as deductions for travel and entertainment expenses and for payment of club dues. Findings of Fact Petitioner filed Federal income tax returns for the years 1944 and 1945 with the collector of internal revenue for the district of New Jersey. Prior to the year 1943, petitioner was a majority stockholder and secretary-treasurer of Alexander Milne Company, a corporation engaged at Plainfield, New Jersey, in the business of building contractor. In June 1942 petitioner began employment for the War Production Board, hereinafter called W.P.B., in New York City, N. Y., as senior industrial analyst at a salary of $4,600 per year. At about the same time Milne Company's other stockholder and officer joined the armed forces, and the company did not carry *66 on any business and did not pay petitioner any salary during the period that he was employed by W.P.B. Through two promotions petitioner had attained a salary from W.P.B. of $6,500 per year when he was transferred effective as of September 3, 1943, to Washington, D.C., at a salary of $8,000 per year. Although he made diligent inquiry, he was unable to find suitable housing accommodations in Washington or vicinity for his wife and two minor children. During his employment in Washington his family continued to live in their home at North Plainfield, New Jersey. His wife had operated a retail dress store in Plainfield, New Jersey, which she closed in the latter part of 1942 but reopened in the summer of 1943 and continued operating during 1944 and 1945. While employed in Washington petitioner lived in a one-room apartment in Alexandria, Virginia. His expenditures for rent of that apartment during the years 1944 and 1945 were $684 and $370.50, respectively. His estimated expenditures for his meals were $577.30 for 1944 and $364 for 1945. Of those amounts $42.54 in 1944 and $22.64 in 1945 were paid by checks for milk and eggs delivered to his apartment. Petitioner kept no records to *67 substantiate the remainder of his food costs. Petitioner owned an automobile which he used about one-third for driving between his apartment and office, and about two-thirds for driving connected with his W.P.B. employment. He received additional gasoline ration coupons to make the business trips to W.P.B. projects in Washington and vicinity. His aggregate expenditures for operating the automobile were $182.40 in the year 1944 and $134.26 during the period from January 1, 1945, to June 15, 1945. During the same periods he spent $68.76 and $28.98, respectively, for train fare on vacation trips to North Plainfield. Petitioner had a telephone in his apartment which enabled his office to contact him during off hours. He also used the telephone to make personal calls to North Plainfield. His aggregate expenditures for the telephone were $106.13 in 1944 and $70.12 in the period from January 1, 1945, to June 15, 1945. Petitioner resigned his position in Washington on June 15, 1945, and returned to North Plainfield at an aggregate cost of $50 which included the expense of cleaning his Alexandria apartment, returning borrowed furniture, and transportation. After returning to North Plainfield, *68 petitioner devoted some of his time during the remainder of 1945 to visiting industrial firms in New York and Philadelphia with a view to obtaining contracts for Milne Company, and visiting Washington, D.C., to maintain friendships made during his employment there of persons who might be influential in securing construction permits from the Federal government for Milne Company projects. Petitioner made the trips in his car which he used solely for the business of Mine Company. During the period from June 15, 1945, to December 31, 1945, his expenses in connection with the car included $41.85 for repairs, $56.65 for insurance premiums, and $46 for fuel, washing, and lubrication. During the same period petitioner paid $30.67 for telephone calls. He does not have records of the amounts spent for the trips so made in attempting to reestablish Milne Company's business, but he estimates them as an aggregate of $32.00 for trips to New York City, $12 to Long Island, $39.42 to Philadelphia, and $228.41 to Washington, D.C. Included in the above estimates were undisclosed amounts spent for entertainment. Milne Company did not reimburse nor expressly agree to reimburse petitioner for any of the *69 above expenses. His compensation from the company was not dependent upon his paying the expenses. Petitioner paid his membership dues to the Plainfield Rotary Club in the amounts of $16 in 1944 and $35 in 1945. He paid $5 to a building contractors' association in 1945. In his return for the year 1944 petitioner claimed aggregate deductions of $1,613.46 as follows: Rent on Alexandria apartment, $684; meals while employed by W.P.B., $577.30; travel, including his automobile expenses in Washington and train fares for vacation trips to North Plainfield, $251.16; and telephone in the apartment, $101. Petitioner subtracted the $1,613.46 from his W.P.B. salary of $8,628.41 and reported the difference, $7,014.95, as income. In his return for the year 1945 petitioner claimed aggregate deductions of $1,696.99. Of that amount, $1,007.99 represented expenses which he claimed were connected with the W.P.B. employment, as follows: Rent, $370.50; meals, $364; travel, $163.74; telephone, $60.25; and expenses of returning to North Plainfield, $50. Petitioner deducted the $1,007.99 from his W.P.B. salary of $5,898.95 and reported the difference, $4,887.96, as income. Petitioner claimed the remainder *70 of the deductions for 1945, in the amount of $689, as being connected with his income from Milne Company, as follows: Automobile repairs, $41.85; automobile insurance, $56.65; automobile operation, $46; automobile depreciation, $162; telephone, $30.67; Rotary Club dues, $35; payment to a building contractors' association, $5; and business trips to New York City, Long Island, Philadelphia, and Washington, D.C., $311.83. Petitioner listed $3,000 as compensation received from Milne Company, from which he subtracted the $689 and reported the difference, $2,311, as income. Respondent has disallowed all of the above deductions for the years 1944 and 1945. Opinion Petitioner advances two arguments to support the disallowed deduction as traveling expense of the cost of meals and lodging while employed in Washington and of transportation to and from Plainfield, New Jersey, where he was maintaining his family. Both are answered in Henry C. Warren, 13 T.C. 205 (Aug. 12, 1949): "* * * Petitioner's maintenance of a home for his family in Cornelia [North Plainfield] may have been caused by a housing shortage in Charleston [Washington], but that consideration was irrelevant *71 to the prosecution of his employer's business. The extra expense of his trips to and from Cornelia and of his living apart from his family in Charleston did not advance his employer's business. They were thus personal expenses, not business expenses, and are accordingly not deductible. Commissioner v. Flowers, supra; Ney v. United States, 171 Fed. (2d) 449 (C.C.A. 8, 1948), cert. denied 336 U.S. 967 (1949); York v. Commissioner, 160 Fed. (2d) 385 (1947); Virginia Ruis Carransa (Zuri), 11 T.C. 224; William W. Todd, 10 T.C. 655; John D. Johnson, 8 T.C. 303; S.M.R. O'Hara, 6 T.C. 841. "* * * In the case at bar petitioner was continuously employed at one post of duty, the Navy Yard in Charleston, S. C., for more than two years. His employment there was not temporary, but indefinite. There is a well-recognized difference between 'indefinite' employment and 'temporary' employment. John D. Johnson, supra.* * *" The deductions in question were properly disallowed. Nor can we approve the deduction as business expense of disbursements assertedly laid out by petitioner to reestablish *72 the business of a corporation in which he was interested. Petitioner concededly incurred the expenses in question for the purpose of improving the business of the company and not to increase his own compensation from it. In Hal E. Roach, 20 B.T.A. 919, 925, we said: "Roach testified in effect that all of the money spent by him was in his capacity of president of Hal E. Roach Studios, a corporation. The parties thereafter occupied the position of debtor and creditor. The money should have been reimbursed to Roach by the corporation. The corporation would then have been in a position to claim the deductions as ordinary and necessary expenses. In this manner its net income might more correctly have been determined. This was not done, however. Though petitioner claims that he spent the money as president and for the benefit of the corporation, he was not reimbursed. The reason does not appear. He thereupon claimed the deductions on his individual return. In our opinion this he had no right to do. * * *." It cannot advance petitioner's case that here his failure to collect his disbursements from the corporation is explained by reference to the need of "what was left of *73 our capital to get us going." For all that appears, either a debt was created which could subsequently be collected, or petitioner made a capital contribution to the corporation. Thomas H. Mastin, 7 B.T.A. 72, 79, affirmed (C.C.A., 8th Cir.), 28 Fed. (2d) 748. We must, in the absence of a more convincing record, similarly sustain the disallowance of deductions for dues to the Rotary Club and another association of which petitioner was a member. Home Guaranty Abstract Co., 8 T.C. 617. As to the expense of maintaining petitioner's automobile, however, the deduction should have been allowed. Petitioner testified that to the extent of two-thirds the car was used in the performance of his duties as an employee of the Government. There is no contrary evidence. An apportionment of the total expenses should be made, Ralph D. Hubbart, 4 T.C. 121 acq., 1944 C.B. 14, and to that extent the deficiency should be reduced. Edwin R. Motch, 11 T.C. 777. Decision will be entered under Rule 50.