Rose L. Simmons v. Commissioner. Mary D. Clark v. Commissioner. E. T. (Jack) Simmons v. Commissioner.
Simmons v. Commissioner
Docket Nos. 22186, 22187, 22189.
United States Tax Court
1950 Tax Ct. Memo LEXIS 114; 9 T.C.M. (CCH) 734; T.C.M. (RIA) 50211; August 30, 1950
Ben M. Davis, Esq., Mims Bldg., Abilene, Tex., for the petitioners. John W. Alexander, Esq., for the respondent. JOHNSON Memorandum Findings of Facts and Opinion JOHNSON, Judge: The respondent determined deficiencies in the income tax of petitioners for the taxable year 1943 in the following amounts: Docket No.
Petitioner
Deficiency
22186
Rose L. Simmons
$5,821.44
22187
Mary D. Clark
2,320.10
22189
E.T. (Jack) Simmons
6,259.41
The proceedings were consolidated for hearing. Because of the provisions of the current Tax Payment Act of 1943 the year 1942 is also involved. The questions presented are: (1) Did the respondent properly determine the *115 bases of petitioners in the stock which they owned in the Abilene Laundry Company at the time it was liquidated on January 31, 1942; the value of the assets received by petitioners through the liquidation of said company; and whether a gain or loss was realized by petitioners at the time the assets received in the liquidation were sold on July 29, 1943? (2) Are the petitioners entitled to additional deductions for depreciation for the years 1942 and 1943? (3) Did respondent properly determine that petitioners improperly deducted dues in the calendar year 1943? (4) Did the respondent properly determine that petitioner, Mary D. Clark, realized a gain of $900 at the time she sold her home in 1943? In Docket No. 22187, petitioner Mary D. Clark claims refunds in the amount of $1,312 for the calendar year 1942 and $245.38 for the calendar year 1941, based on a claimed loss carry-back from the calendar year 1943. Findings of Fact Petitioners, residents of the State of Texas, filed their tax returns for the years 1942 and 1943 with the collector of internal revenue for the second district of Texas. All returned their income on a calendar year basis. Mary D. Clark is the surviving *116 widow of C. W. Clark, who died on October 9, 1936. Mrs. Clark's maiden name was Simmons. H. P. Simmons is her brother. E. T. (Jack) Simmons is her nephew, and Rose L. Simmons is the wife of E. T. (Jack) Simmons. They were married prior to 1934. Prior to 1931 C. W. Clark and Mary D. Clark operated a laundry business in Abilene, Texas. In 1931 a corporation was formed under the laws of the State of Texas known as the Abilene Laundry Company of Abilene, Texas (hereinafter referred to as the corporation). The corporation income tax return filed by this company for the year 1931 was signed under oath by C. W. Clark as president and by H. P. Simmons as treasurer. On Schedule "C" relating to compensation of officers, it was reported that C. W. Clark owned 800 shares of common stock and H. P. Simmons owned 400 shares. Attached to the return as Schedule "I" are details regarding the assets acquired by the corporation on or about January 5, 1931. This schedule is as follows: Date Acquired
Cost
Rate
This Year
Prior Years
Reserve
Laundry
Machinery -
Abilene Plant
1924 to 1929
90,051.99
7%
6,303.56
26,455.23
32,758.79
Liberty Plant
1923 to 1929
18,692.95
7%
1,312.63
11,190.01
12,502.64
Office Equipment
Abilene Plant
1924 to 1930
2,725.95
10%
272.59
1,242.09
1,514.68
Liberty Plant
1924 to 1929
709.64
10%
70.96
503.91
574.87
Dodge Coupe
1-1-1929
500.00
25%
500.00
500.00
Buick Coupe
1-1-1931
1,960.00
20%
392.00
392.00
Ford Delivery
Trucks 15
1930
11,377.50
33 1/3%
3,792.15
2,528.00
6,320.15
Paving
1926 & 1929
3,800.00
8%
304.00
728.00
1,032.00
Sheet Iron Bldg.
10-15-23
1,500.00
4%
60.00
1,080.00
1,140.00
Sheet Iron Bldg.
1-1-26
2,800.00
4%
112.00
681.33
793.33
Brick and
Concrete Bldg.
1-1-29
51,800.00
2 1/2%
1,295.00
2,590.00
3,885.00
Land
1923-1928
12,925.00
198,843.03
13,914.89
47,498.57
61,413.46
*117 PREDECESSOR BUSINESS The Assets were taken over from C. W. Clark as follows: Cost to
Cost to
C. W. Clark
Corporation
Difference
Machinery and Equipment
$112,436.53
$126,975.00
$14,538.47
Building and Paving
59,900.00
58,800.00
- (1,100.00)
Land
12,925.00
31,200.00
18,275.00
Automobiles
15,637.50
15,460.00
- (177.50)
Other Assets
11,992.46
11,992.46
$212,891.49
$244,427.46
$31,535.97
Depreciation has been computed on cost to C. W. Clark. Consideration for sale of assets to Corporation was issuance of stock for assets. The petitioners did not produce any books and records of Abilene Laundry Company. The only records kept until 1937 consisted of check stubs, deposit slips and cancelled checks. When E. T. Simmons assumed management of the corporation after the death of C. W. Clark a ledger was kept. All records were destroyed or mislaid prior to the trial, and all that remained were work papers used by the accountants who prepared the corporation's tax returns for the various years and the returns filed for those years. On January 5, 1931, the corporation issued the following stock certificates: No. 1 C. W. Clark
500 shares
No. 2 C. W. Clark
100 shares
No. 3 C. W. Clark
100 shares
No. 4 C. W. Clark
100 shares
No. 5 Mary D. Clark
250 shares
No. 6 H. P. Simmons
400 shares
*118 The balance sheet on page 2 of the corporation's return for 1931 indicates that in consideration for the issuance of this stock, the assumption of liabilities of $38,648.56, and an additional amount of $60,778.90 "Due Vendors", it acquired assets which it listed in the balance sheet at $244,427.46. During the year 1931, cash withdrawals were made by C. W. Clark in the amount of $16,304.22 and by H. P. Simmons in the amount of $2,040.55 and charged by petitioners' accountant to account "Balance due vendors". Other charges in the amount of $6,346.35 were made to that account subsequent to 1931 and prior to July 31, 1935, so that on the latter date a balance of $36,087.78 remained in the account. On July 31, 1935, an additional 490 shares of the corporation's stock were issued to C. W. Clark and the accountant charged the account "Balance due vendors" with $36,087.78 and C. W. Clark with $13,212.22. The corporation did not collect the $13,212.22 from Clark and at the end of 1937 its accountant charged this amount to surplus. Stock certificate No. 6 for 400 shares, issued to H. P. Simmons on January 5, 1931, was transferred to C. W. Clark and reissued in his name as certificate No. *119 15 under date of May 10, 1933. During 1934 H. P. Simmons was declared to be non compos mentis and C. W. Clark was appointed his guardian. The assets and liabilities of the corporation as of January 1, 1936, and December 31, 1936, as set forth in the balance sheets on page 5 of its income and excess-profits tax return for 1936, were as follows: ASSETS
January 1, 1936
December 31, 1936
Cash
$ 1,068.58
$ 1,122.16
Notes receivable
6,451.30
1,533.36
Accounts receivable
2,936.13
2,804.47
Inventories
1,719.69
1,338.22
Deferred charges: Prepaid insurance
$ 455.21
$ 616.52
All other
536.60
991.81
384.31
1,000.83
Capital assets: Buildings
55,000.00
55,000.00
Machinery and Equipment
123,556.62
119,790.50
Furniture and fixtures
3,144.00
3,144.00
Delivery equipment
11,700.00
12,173.50
Less reserves for depreciation
(96,882.33)
96,518.29
(100,481.87)
89,626.13
Land
35,000.00
35,000.00
Other Assets: Officers and loan
17,571.44
19,609.05
Deposit
64.29
17,635.73
64.29
19,673.34
Total Assets
$162,321.53
$152,098.51
LIABILITIES
Notes payable
$ 23,463.42
$ 22,548.42
Accounts payable
11,598.04
1,997.78
Mortgages (including bonds and notes so
secured)
12,630.73
10,696.76
Accrued expenses: Interest
$ 3,175.98
$ 3,784.09
Taxes
2,345.91
1,185.71
All other
201.21
5,723.10
489.18
5,458.98
Capital stock
200,000.00
50,000.00
Undivided profits
(91,093.76)
61,396.57
Total Liabilities
$162,321.53
$152,098.51
*120 In 1934 E. T. Simmons, upon request of C. W. Clark, moved to Abilene and went to work for Abilene Laundry Company. In 1935 C. W. Clark became ill and E. T. Simmons was more or less in charge of the plant thereafter, due to Clark's ill health, and upon Clark's death in 1936, E. T. Simmons became exclusive manager of the laundry and so continued until the corporation was liquidated. The personal services of E. T. Simmons, including his ability, time and attention to the management and operation of the business, contributed largely to the increase, after 1936, of its income and the enhancement of the value of its stock upon its liquidation. C. W. Clark died on October 9, 1936. At the time his estate was being handled in the Probate Court for Taylor County, Texas, an inventory and appraisement, and a list of claims, were prepared by E. T. Simmons and another individual in which they stated that the value of the stock of C. W. Clark in the Abilene Laundry Company at the time of his death was $2.50 per share. On December 30, 1936, the stated capital of the corporation was reduced from $200,000 to $50,000 and $25 par value stock was issued to the following: Mary D. Clark
1,433 shares
E. T. Simmons
500 shares
H. P. Simmons
1 share
Other individuals
66 shares
Total
2,000 shares
*121 E. T. Simmons paid nothing for the 500 shares issued to him on December 30, 1936. In 1938 the final account of C. W. Clark as guardian of the estate of H. P. Simmons was filed by Mary D. Clark as community survivor. This account was not satisfactory to H. P. Simmons who contended that C. W. Clark had misappropriated 500 shares of the corporation's stock owned by him and he threatened to sue Mary D. Clark. Thereafter on September 20, 1938, E. T. Simmons transferred to Mary D. Clark the certificate for 500 shares he had received on December 30, 1936, and on the same date, September 20, 1938, Mary D. Clark assigned these 500 shares to H. P. Simmons pursuant to the following agreement: "This contract and agreement entered into by and between Hilliar P. Simmons, Party of the First Part, and Mrs. Mary D. Clark, individually, and as Executrix of the estate of C. W. Clark, deceased, Party of the Second Part, WITNESSETH: "For value received, I, Mrs. Mary D. Clark, individually, and as executrix of the estate of C. W. Clark, deceased, the owner and holder of 500 shares of stock in the Abilene Laundry Company of Abilene, Taylor County, Texas, being stock Certificate No. 12 in said Company, *122 a corporation, do hereby sell, assign and transfer and set over the said 500 shares of stock and certificate thereof to Hilliard P. Simmons of Abilene, Taylor County, Texas, and I authorize and direct the Secretary or other proper officer of such corporation duly to make and enter such transaction upon the books of said corporation. "As a part of the consideration for the transfer of said stock, the said Hilliard P. Simmons, Party of the First Part, hereby agrees to transfer and assign and set over to Mrs. Mary D. Clark, Party of the Second Part, one share of stock in the Abilene Laundry Company, a corporation, being Certificate No. 10, and I authorize and direct the Secretary or other proper officer of such corporation duly to make and enter such transaction upon the books of said corporation. "It is agreed and understood that the assignment of said 500 shares of stock by Party of the Second Part to Party of the First Part takes the place of, and is in lieu of the 20 shares of stock set out in the inventory and appraisement in the Estate of Hilliard P. Simmons, No. 2244 in the Probate Court of Taylor County, Texas. "It is further agreed and understood that the transfer and assignment *123 of said 500 shares above mentioned is the total amount of shares of stock owned by Hilliard P. Simmons in the Abilene Laundry Company, and is all that he is entitled to, and as a part of the consideration of the conveyance of said 500 shares above mentioned by Mrs. Mary D. Clark, the said Hilliard P. Simmons hereby withdraws any and all opposition or contest to the final report of C. W. Clark, guardian of the person and estate of Hilliard P. Simmons, and hereby agrees that same may be approved by the Court, it being understood that the transfer of said 500 shares of stock settles all controversy raised in the contest in opposition to said report. "It is further agreed and understood that as a part of the consideration for the conveyance of said 500 shares above mentioned, the said Hilliard P. Simmons hereby releases and discharges the estate of C. W. Clark and Mrs. Mary D. Clark, both individually and as executrix of the estate of C. W. Clark, and the Massachusetts Bonding & Insurance Company from any and all liability of whatsoever nature or character in the matter of the guardianship of Hilliard P. Simmons, No. 2244 in the Probate Court of Taylor County, Texas. "It is agreed *124 and understood by the parties hereto that the transfer and assignment of said 500 shares of stock in the Abilene Laundry Company, a corporation, to Hilliard P. Simmons settles any and all controversy between the parties hereto and the estate of C. W. Clark, and that the said Hilliard P. Simmons is to have only 500 shares of stock in said Company by virtue of the settlement agreement. "It is further agreed and understood that the said Hilliard P. Simmons is accepting said 500 shares of stock in lieu of the original stock issued to him when the said company was originally incorporated. "It is further agreed and understood that the said Hilliard P. Simmons hereby agrees to the reduction of the value of said stock as heretofore made by the Company on or about December, 1936, whereby the stock was reduced in value from $100.00 per share to $25.00 per share. It is further agreed and understood that said Hilliard P. Simmons shall not claim and is not claiming any profits that may be derived from said 500 shares prior to this date, or any profits of said company that he may be entitled to by virtue of said 500 shares, save and except money that might have been wrongfully misappropriated *125 by the officers of said company. [Signed] "Mrs. Mary D. Clark, Party of the First Part, individually and as Executrix of the Estate of C. W. Clark, deceased. [Signed] "H. P. Simmons, Party of the Second Part." The 500 shares acquired by H. P. Simmons pursuant to the above agreement were transferred by him on March 10, 1939, to E. T. Simmons, and on that date the following agreement was executed: "THAT, Whereas, E. T. Simmons this day purchased from H. P. Simmons five hundred (500) shares of stock in the Abilene Laundry Company, together with any rights, claims or demands that he may have or have had by reason of being the owner and holder of five hundred (500) shares of stock being certificate No. twelve (12) in the Abilene Laundry Company issued to him on the 20th day of September, 1938, and subsequent thereto and including this date and for the release of any claims or demands that he might have held against the Abilene Laundry Company prior to the time of issuing of said five hundred (500) shares of stock on September 20th, 1938, all of which claims and demands, if any, including any payments due thereunder or any interest that the said H. P. Simmons may have had in *126 said Abilene Laundry Company at any time heretofore, all of which are being transferred this day to the said E. T. Simmons for a valuable consideration hereinafter stated, and "WHEREAS, the firm of Cox & Hayden, Attorneys have represented the said H. P. Simmons in the matter of recovery of the said five hundred (500) shares of stock under certificate No. twelve (12) and by reason thereof have an interest therein, which likewise said interest is herein transferred to the said E. T. Simmons. "NOW THEREFORE, for and in consideration of the sum of Five Thousand Dollars ($5,000.00) cash in hand paid to H. P. Simmons and Cox & Hayden, Ben L. Cox and Thomas E. Hayden, Jr., repectively, the receipt of which is hereby acknowledged we do hereby release, remise, discharge, quitclaim, set over and transfer to the said E. T. Simmons the said five hundred (500) shares of stock in the said Abilene Laundry Company, certificate No. twelve (12) issued September 20th, 1938 and any claims, rights, demands or obligations that we or either of us may heretofore have had or may now have against said Abilene Laundry Company and declare that the same is fully and finally satisfied and transferred by this *127 instrument for this consideration paid by E. T. Simmons. "WITNESS our hands at Abilene, Taylor County, Texas this the 10th day of March A.D. 1939." On March 28, 1939, E. T. Simmons transferred to his wife, Rose L. Simmons, the 500 shares which he acquired from H. P. Simmons. On February 1, 1941, he acquired from several minority stockholders 45 shares and a new certificate for 45 shares was issued to him. On September 21, 1938, Mary D. Clark transferred to a minority stockholder 9 shares, and on January 1, 1942, this minority stockholder transferred to Mary D. Clark 10 shares. She also acquired one additional share from H. P. Simmons pursuant to the contract which she entered into with him which is set forth in our findings. On January 31, 1942, Mary D. Clark made a gift of 500 shares to E. T. Simmons. The tax returns filed by the Abilene Laundry Company for the years 1931 to 1941, inclusive, show the following profit or loss: 1931
$ 8,300.15
loss
1932
11,689.90
loss
1933
9,993.56
loss
1934
2,950.55
loss
1935
935.09
loss
1936
851.93
loss
1937
2,393.29
net income
1938
520.43
loss
1939
177.82
loss
1940
855.28
net income
1941
14,112.97
net income
*128 On January 31, 1942, the corporation was dissolved and liquidated. The ownership of its stock on that date was as follows: Mary D. Clark
935 shares
E. T. Simmons
545 shares
Rose L. Simmons
500 shares
E. T. Simmons, trustee,
(Treasury stock)
20 shares
2,000 shares
The basis for gain or loss of the 935 shares of stock owned by Mary D. Clark at the time of the liquidation of the corporation on January 31, 1942, is $45,618.65. At the time of the liquidation E. T. Simmons owned as his separate property 500 shares which he had received by gift from Mary D. Clark. The basis for gain or loss to him for these 500 shares is $24,395. At the time of the liquidation 545 shares were owned by the community of E. T. Simmons and Rose L. Simmons. The basis for gain or loss of these 545 shares is $5,000. The balance sheet included in the final return of the corporation for the month of January 1942, filed on March 12, 1943, shows the following assets and liabilities: ASSETS
Cash
$ 3,731.65
Notes and accounts receivable
12,588.03
Inventories (Supplies)
6,126.80
Capital assets: Depreciable assets *
$148,340.67
Less reserve for depreciation
65,809.19
82,531.48
Land
34,000.00
Other Assets
10,488.95
Total Assets
$149,466.91
LIABILITIES
Accounts payable
$ 5,986.42
Bonds, notes, and mortgages payable: With original maturity of 1 year or more
38,000.00
Accrued expenses
3,428.69
Other liabilities
3,502.64
Capital stock: Common stock
50,000.00
Earned surplus and undivided profits
48,112.97
Total Liabilities
$149,466.91
*129 *130 Footnotes
*. In "Schedule J. - Depreciation" of the return, the depreciable assets, their cost, and depreciation allowed or allowable, is set forth as follows: Depreciation
Depreciation
allowed
allowable
Date
Cost or
(or allowable)
this
Acquired
Other Basis
in prior years
year
Building
1931
$51,800.00
$16,835.00
$107.92
Laundry Machinery
Var.
84,682.29
40,683.56
612.23
Other Equipment
Var.
3,215.50
1,185.89
21.45
Furn. and Fixtures
Var.
3,684.31
3,121.55
7.01
Delivery Equipment
Var.
5,165.18
4,070.16
24.17
With the following exceptions, the amounts shown on the balance sheet represent the value of the assets of the corporation and the depreciated cost of the depreciable assets in the depreciation schedule received by petitioners on January 31, 1942, when the corporation was liquidated: Land, Other assets (good will), Delivery equipment, Laundry machinery and equipment, On January 31, 1942, the value of the land was $25,000. The good will, listed under the head "other assets", had no value. The delivery equipment, consisting of eight vehicles, to-wit, one 1936 Chevrolet halfton panel, four 1937 half-ton panels, one 1934 Ford half-ton panel, one 1939 Ford 85 h.p. 3 1/4 ton panel, and one International six wheel van, had a value on January 31, 1942, of $3,200. The value of the laundry machinery and equipment on January 31, 1942, was $64,613.35. The value of the assets distributed to petitioners upon the liquidation of the corporation was $101,763.07 ($152,680.82 total assets less liabilities of $50,917.75). The petitioners in filing their tax returns for 1942 stated that the assets received by them in the liquidation of the corporation had a total value of $98,312.02. They claimed a loss by representing that the stock had a cost basis of $198,000, $99,000 to E. T. Simmons and wife and $99,000 to Mary D. Clark. Because of the provisions of section 117 (d) (2), Internal Revenue Code, limiting the amount of allowable losses from sales or exchanges of capital assets to the gains from such sales or exchanges, plus the net income of the taxpayer, or $1,000, whichever is smaller, the amount of the loss deducted by each of the petitioners was $1,000. Respondent determined that Mary D. Clark realized a long-term capital gain from the liquidation, and in the statement attached to the deficiency notice sent to her gave the following explanation: "(a) It has been determined that you realized a taxable gain of $4,871.04 on the exchange of your stock valued at $27,965.85 for assets valued at $37,707.93 in the liquidation of Abilene Laundry Company on January 31, 1942 instead of a capital loss of $1,000.00 reported in 1942. The income reported by you in 1942 is increased by $5,871.04, computed as follows: Fair value of assets received Jan. 31, 1942
$37,707.93
Basis for 935 shares of stock surrendered
27,965.85
Gain realized
$ 9,742.08
Gain recognized, section 117, Internal Revenue Code, 50%
$ 4,871.04
Plus: Loss claimed on return
1,000.00
Adjustment - Addition to 1942 income
$ 5,871.04"
Respondent determined that E. T. Simmons and his wife realized a long-term capital gain from the liquidation, and in the statement attached to the deficiency notice sent to each gave the following explanation: "(1) It has been determined that you realized a taxable gain of $10,419.58 on the exchange of your stock valued at $21,305.00 for assets valued at $42,144.16, in the liquidation of the Abilene Laundry Company January 31, 1942, instead of a capital loss of $1,000.00 reported by you in 1942. The income reported for 1942 is increased by $11,419.58, computed as follows: Fair value of assets received Jan. 31, 1942
$42,144.16
Basis of 1045 shares of stock surrendered
21,305.00
Gain realized
$20,839.16
Gain recognized, section 117, Internal Revenue Code, 50%
$10,419.58
Plus loss claimed on return
1,000.00
Adjustment - Addition to 1942 income
$11,419.58"
After the dissolution and liquidation of the corporation on January 31, 1942, Mary D. Clark and E. T. Simmons operated the laundry business as partners under the name of the Abilene Laundry & Dry Cleaning Company. In the partnership return for 1942 the partnership reported net income of $17,903.89, and the distributive share of E. T. Simmons to be $9,863.30 and Mary D. Clark $8,040.59. In 1942 and 1943 the partnership had all the business it could handle and did a large amount of work in connection with Army camps located nearby. During these years all laundries were having a very difficult time getting machinery and help. On July 29, 1943, the partnership sold all of its assets for $90,000, and in its return claimed a loss of $21,984.63. The respondent determined that the cost of the assets sold was $94,463.47, and that the partnership sustained a loss on the sale of $4,463.47. During the years 1942 and 1943, E. T. Simmons was a member of the Abilene Club, Abilene Country Club, and Kiwanis Club. The club dues were paid by the partnership. The partnership handled all of the laundry of the Abilene Club and of the Abilene Country Club. E. T. Simmons expected to derive business benefit through association with people at these clubs who might help him in business. Mary D. Clark purchased a residence in 1936 at a cost of $3,600 and during 1943 sold it for $4,700. She paid a selling commission of $200. The respondent determined that she realized a profit of $900 from the sale of which $450 was taxable as a long-term capital gain. During the period she owned the residence she made expenditures of $500 for permanent improvements. Opinion The first question presented in these proceedings relates to the amount of gain realized or loss sustained by the petitioners when the corporation was liquidated on January 31, 1942, and when the assets of the partnership formed on that date were sold in 1943. The answer to this question depends upon the amount of stock owned by the petitioners in the corporation at the time it was liquidated on January 31, 1942; their bases for gain or loss on this stock; and the value of the assets distributed by the corporation to the petitioners at the time of liquidation, concerning which the parties are in disagreement. After these controverted items have been settled, the computation of the petitioners' gain or loss is a matter of mathematical computation. The burden of proof was on the petitioners, and they were handicapped by the failure of C. W. Clark, who managed the laundry business during his lifetime, to keep any books, and by the fact that such records as were kept, consisting of check stubs, deposit slips and cancelled checks, were destroyed or mislaid prior to the trial, and petitioners had to resort to work sheets of the accountant who prepared the income tax returns and balance sheets and other data contained in income tax returns filed. The evidence concerning the issuance of the corporation's stock and the consideration for which it was issued is not as clear as we feel it should have been, and we have had to resolve some doubts, some of which might have been removed if Mary D. Clark had appeared as a witness, against the petitioners. Inasmuch as the questions involving the basis of the stock owned by petitioners at the time of liquidation and the value of the assets received by them at that time are largely factual, any extended discussion of the evidence, the substance of which is set forth in our findings, would serve no useful purpose. Suffice to say, that all of the evidence submitted by both parties has received careful consideration in arriving at both the basis of the stock and the value of the assets. The evidence convinces us, and we have found as a fact, that at the time the corporation was liquidated Mary D. Clark owned 935 shares of its stock, part of which had been acquired by her when the corporation was organized in 1931, part on the death of her husband in 1936, and part after his death, and that her basis for gain or loss for these 935 shares on January 31, 1942, is $45,618.65; that at the time of the liquidation E. T. Simmons owned as his separate property 500 shares which he had received as a gift from Mary D. Clark and that his basis for gain or loss on these shares is $24,395; and that at the time of the liquidation the community of E. T. Simmons and Rose L. Simmons owned 545 shares which had a basis for gain or loss of $5,000. Any profit realized in connection with the liquidation of the corporation as a result of the surrender by E. T. Simmons of the 500 shares which constituted his separate property for assets was community property of E. T. Simmons and Rose L. Simmons and one-half thereof is taxable to each. W. T. Carter, Jr., 36 B.T.A. 853. Here, as there, the gain in value of the stocks was largely attributable to the personal services of E. T. Simmons, including his ability, time and attention to the business. That characteristic is sufficient to make such gain community rather than separate property. Commissioner v. Skaggs, 122 Fed. (2d) 721; Martin O'Connor, 40 B.T.A. 489. The value of the assets received by petitioners at the time of the liquidation of the corporation on January 31, 1942, is based largely upon the balance sheet of the corporation contained in the final return of the corporation which is set forth in our findings. The respondent determined that the value of the assets on January 31, 1942, was the book value of $149,466.91 less alleged good will of $10,488.95, and less $9,000 of the claimed $34,000 valuation placed upon the land. After reducing the assets by $19,488.95, the respondent subtracted the liabilities listed on the balance sheet and arrived at a liquidation valuation of $79,466.91. The petitioners contend that the liquidation valuation was in excess of $79,466.91. They concede that the corporation had no good will and that the valuation placed on the land by the respondent was proper. They urge that on January 31, 1942, the laundry machinery and delivery equipment owned by the corporation had a much greater value than its depreciated cost used by the respondent in his computation of value. One witness for petitioners, E. T. Simmons, who, as manager of the business from and after the death of C. W. Clark, was familiar with both the machinery and delivery equipment expressed the opinion that on January 31, 1942, the laundry machinery had a value of from $75,000 to $80,000, and that the delivery equipment had a value of $3,200. Another witness for petitioners, who qualified as having expert knowledge of laundry machinery and equipment, expressed the opinion that the value of the corporation's laundry machinery and equipment on January 31, 1942, was $64,613.35, to which he added 10 per cent for installation and freight. The respondent stresses the fact that all of the assets of the business sold for $90,000 on July 29, 1943, and urges that the value of these assets was less on January 31, 1942, than when sold in 1943. After a careful consideration of all of the evidence, we have concluded, and found as a fact, that the value on January 31, 1942, of the delivery equipment was $3,200, and of the laundry machinery and equipment $64,613.35. Substituting these values for the depreciated cost used by the respondent we have found as a fact that the value of the assets received by petitioners upon the liquidation of the corporation was $101,763.07. The petitioners' next contention is that they are entitled to a deduction for additional depreciation on laundry machinery and delivery equipment for the years 1942 and 1943. Inasmuch as the depreciation allowance to the partnership was computed on the depreciated cost of the laundry machinery and delivery equipment, rather than on the values we have found these assets to have at the time they were distributed in liquidation and turned over to the partnership, the petitioners are entitled to additional deductions for depreciation which will result from the substitution of the values so found for depreciated cost. The next issue relates to the deduction claimed for club dues of E. T. Simmons, which were paid and claimed as deductions by the partnership. The burden was on the petitioners to show that these dues were both ordinary and necessary and that they were expenses paid in carrying on the laundry business. Petitioners have not satisfied this burden by testimony that two of the clubs gave all of their laundry business to the partnership and that E. T. Simmons expected to derive some business benefit through association with people at these clubs. Cf. Home Guaranty Abstract Co., 8 T.C. 617. We hold that the respondent properly disallowed the deductions claimed for club dues. The remaining issue relates to the determination of the respondent that Mary D. Clark realized a gain of $900 upon the sale of her residence in 1943. Petitioners contend that the respondent erred in finding that Mary D. Clark realized a profit on this sale and in failing to allow as a cost to be added to her basis approximately $1,000 for amounts expended by her on the residence after its acquisition. E. T. Simmons testified that Mary D. Clark expended considerable money in repairing and improving her property, and that these expenditures were made for such items as a new roof, an additional room, walks, repapering, painting, and planting trees, shrubs, grass and flowers. On cross examination he frankly stated he did not know how much she had spent for such items in any of the years 1936 to 1943, inclusive. From his testimony it is quite apparent, however, that she did make expenditures for permanent improvements during the period she owned the residence and that some addition to cost should be allowed by reason thereof. Cf. Cohan v. Commissioner, 39 Fed. (2d) 540. We have, therefore, found as a fact that during the years she owned the residence she expended $500 for permanent improvements, and this amount should be added to her cost in determining the taxable gain resulting from the sale in 1943. Decisions will be entered under Rule 50. ↩