James Phelan & Vera D. Phelan v. Commissioner.
Phelan v. Commissioner
Docket No. 59724.
United States Tax Court
T.C. Memo 1959-53; 1959 Tax Ct. Memo LEXIS 195; 18 T.C.M. (CCH) 248; T.C.M. (RIA) 59053; March 20, 1959
*195 James Fletcher Mazyck, Esq., for the petitioners. Raymond T. Mahon, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion In this case the respondent has determined a deficiency in petitioners' Federal income tax for the year 1952 in the amount of $2,489.10, an overassessment of petitioners' Federal income tax for the year 1951 in the amount of $2,337.08, and additions to tax pursuant to sections 294(d)(1)(A) and 294(d)(2), as follows: Sec. 294
Sec.
Year
(d)(1)(A)
294(d)(2)
1951
$102.91
$ 64.61
1952
261.90
174.61
1953
424.40
254.64 At the trial herein counsel for respondent conceded that as a result of minor mathematical errors the correct amounts of the additions to tax under section 294(d)(1)(A) for the years 1951 and 1953 were in the respective amounts of $96.91 and $403.18. Petitioners, in their brief, state the only issue involved herein to be "whether the Commissioner of Internal Revenue erred in making such additions to the tax." In the same brief the "Points Upon Which the Petitioners Rely" are stated as follows: "Petitioners had reasonable cause for failure to file Declaration of Estimated Tax for the *196 years 1951-52-53. The Commissioner erred in assessing an addition to the tax under Section 294(d)(2) for 1951 because there cannot be a penalty for substantial underestimation when the final tax liability for the year as computed by the Government and accepted by the Petitioners shows an overassessment in favor of the Petitioners." Findings of Fact Petitioners, who are husband and wife, lived in Lynn, Massachusetts, during the taxable years and filed joint income tax returns for those years with the office of the district director of internal revenue for the district of Massachusetts. They did not file declarations of estimated tax for the years 1951, 1952, and 1953. In their income tax returns for 1951, 1952, and 1953, petitioners reported the receipt of salary from James Phelan & Co., Inc., of Boston, Massachusetts, in the respective amounts of $13,000, $13,000, and $13,250; the receipt of dividend income in the respective amounts of $1,452, $858, and $1,454; and the receipt of gross rental income in the respective amounts of $33,979.36, $37,279.32, and $39,216.40; and net profits from rents in the respective amounts of $10,716.87, $10,655.38, and $11,523.77. In their income *197 tax return for 1951, petitioners took "Miscellaneous" deductions of $200 explained as "Settlement of Lawsuit with Tuttle Millinery, Inc., Suffolk Superior Court"; and of $1,500 explained as "Forfeiture & Release on contract to purchase real estate for investment." In their return for 1952, petitioners took a deduction on account of loss from business in the amount of $11,212.11, which was explained as follows: "Taxpayer engaged in luminous paint business with Robert E. Russell, under firm name of Russell & Ewart Co., 20 Harbor St., Lynn, Mass., as a common law partnership. Taxpayer had invested $11,212.11 of which $2,500 was capital and the balance as advances to the firm; the business was abandoned Dec. 23, 1952 with a complete loss to the taxpayer, as no return was received as all resources of the firm were expended in research and promotion effort; business certificate was withdrawn from Lynn City Hall, Dec. 23, 1952 and further activity ceased." In their income tax return for 1953, petitioners took a deduction on account of loss from business in the amount of $696.73, which was explained as follows: "Taxpayer engaged in luminous paint business with Robert E. Russell, under *198 firm name and style of Russell & Ewart Co., 20 Harbor St., Lynn, Mass., as a common law partnership. Taxpayer had invested $11,212.11, of which $2,500 was capital and the balance as advances to the firm; the business was abandoned Dec. 23, 1952, with a complete loss to the taxpayer, as no return was received; all resources of the firm were expended in research and promotion effort; business certificate was withdrawn from the City Clerk's Office, Lynn City Hall, Dec. 23, 1952 and activity ceased; Claims against the partnership for merchandise sold and services rendered were made on the taxpayer during year 1953 and paid by the taxpayer in 1953 to the extent of $696.73, and taken as a loss in Schedule C. This sum of $696.73 was not claimed in any previous return as a loss; taxpayer reports on cash basis." In their 1951 return petitioners claimed four dependency exemptions, and in their 1952 and 1953 returns they claimed three dependency exemptions. The principal occupation of James was that of "Restaurant Executive." The restaurant which James managed leased from him a piece of property located in Boston which he owned. The other rental properties which he owned were located in Lynn. *199 The lease of the Boston property provided for the payment of a fixed rental plus additions based on assessment of taxes. Petitioners reported their income on a cash basis except that certain expenses in connection with their rental property including taxes were accrued. James was "an operator and management man" who had no knowledge of accountancy. During the taxable years and for several years prior thereto, James consulted with Leo C. Wall, an attorney, on tax and legal matters. Wall was also clerk of the corporation and lawyer for James Phelan & Co., Inc., the stock of which was owned by James. James discussed his personal tax problems with Wall, principally "at tax times" but occasionally at other times through the year. Wall was acquainted with James' business transactions and had access to his books. James relied on Wall's advice and assigned papers relating to taxes which Wall brought to him and advised him to sign. James assumed that Wall as a lawyer was qualified to advise him in connection with tax problems although his only knowledge as to Wall's experience and background in the field of Federal taxation was that Wall prepared tax returns for him and his corporation *200 and had taken care of his own father's tax and legal matters. During the taxable years James was aware of the existence of the law requiring the filing of declarations of estimated tax, was aware of the specific requirements calling for the filing of such declarations, and knew that those requirements applied to him. James filed a declaration of estimated tax for the year 1947. In April, 1951, James entered into a partnership venture having to do with the manufacture of luminous paint. It was contemplated that this paint would be used in work under a contract which the Westinghouse Electric and Manufacturing Company expected to obtain from the United States Government. This contract did not materialize and the partnership was dissolved in 1952. James consulted with Wall with regard to this partnership venture. James knew that during the beginning period of the partnership there would be operating losses "preparatory to a profit." During one of his conversations with Wall, James understood Wall to say something in a general way about the effect of such losses on his income taxes, including the possibility that such losses might offset in whole or in part his taxable profits for *201 an indeterminate period. James never specifically asked Wall for advice with regard to filing declarations of estimated tax. Petitioners did not file declarations of estimated tax for the taxable years because such declarations were not prepared by Wall for their signatures. Opinion KERN, Judge: For the year 1951 respondent's determination of an overassessment of income taxes in the amount of $2,337.08 and of additions to tax in the total sum of $167.52, constitutes the determination of a net overassessment and consequently there is no determination of a deficiency which would give us jurisdiction over that taxable year. Charles E. Myers, Sr., 28 T.C. 12. With regard to the other two years we proceed to a consideration of petitioners' contention that their failure to file declarations of estimated tax was due to reasonable cause. This is not a case in which taxpayers have failed to file a Federal tax return because of their reliance upon the advice of competent tax counsel upon a vexed question involving the interpretation of some complicated or ambiguous provision of the Internal Revenue Code. We are convinced by the record herein that petitioners' failure *202 to file declarations of estimated tax for the taxable years was caused by their assumption that all necessary returns and declarations would be prepared for their signature and filed on their behalf by their lawyer, and by the fact that their lawyer (who did not testify herein) negligently failed to prepare and file such declarations. James knew that the declarations should be filed. In our opinion, he summed up the situation accurately in the following testimony: "I must repeat again that I left the whole thing in Leo's [Wall's] hands, and if Leo did not file - which obviously he didn't - then he did me a grave injustice. That is why I am here in Court. * * * He was expected to file, and I assumed he did. I regret to say now that he didn't." The failure to file the declarations was due to the negligent omission of a ministerial act by an employee and was not due to an error of professional judgment upon a question submitted to competent tax counsel for advice. Under these circumstances we conclude that the failure of petitioners to file declarations of estimated tax for the years 1952 and 1953 was not due to reasonable cause. See Home Guaranty Abstract Co., 8 T.C. 617, 622.
*203 A decision will be entered herein dismissing this proceeding insofar as it relates to the year 1951 for lack of jurisdiction, and finding deficiencies for 1952 and 1953 in amounts determined by respondent but modified by reason of concessions made at time of trial.