ROBINSON'S DAIRY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 80269. Filed January 18, 1961.

*Stanley L. Drexler, Esq., Edward I. Haligman, Esq.,* and *Ellis J. Sobol, Esq.,* for the petitioner.

*Donald L. Sturm, Esq.,* for the respondent.

604

### OPINION.

Murdock, *Judge:* The Commissioner has determined that the petitioner does not qualify as a "new corporation" under section 430(e) of the Internal Revenue Code of 1939. He relies particularly in his brief on sections 430(e)(2)(B)(i) and 445(g)(2)(C). Section 430 (e) provides for an alternative tax rate which can be applied to so-called new corporations in case it is lower than the maximum rate applicable to corporations generally. The benefit thus accorded new corporations was to give them some relief through lighter tax during the early growth years of their existence. The provisions of the law in this respect are rather complicated. See *Phinney* v. *Tuboscope Co.*, 268 F. 2d 233.

The legislative history relating in general to these provisions includes the following from S. Rept. No. 781, 82d Cong., 1st Sess., pp. 72 and 73 (1951):

In addition, your committee believes that despite the need for revenue in the present emergency every possible effort must be made to assure the creation and

development of new techniques, new processes, and new corporations. This is desirable if the ability of this country to produce is to continue to expand.

As a result it is believed necessary to give assurance to new corporations in their initial period of development that the excess profits tax will not work undue hardship upon them.

\* \* \* \* \* \* \*

These special ceiling rates available to new corporations in their period of development are not to be available to new corporations created as the result of either a tax-free reorganization or a taxable transaction of the type where, under your committee's action, the purchasing corporation would be entitled to base its income credit on the earnings experience of the predecessor. Your committee believes that such corporations do not truly represent "new business." \* \* \*

Section 430 (e) (2) (B) (i) is one of the provisions which tacks the life of a previous corporation onto the life of the taxpayer corporation so as to disqualify the taxpayer in whole or in part for the new corporation relief. The petitioner conceded that if this provision applies it gets no relief. The section provides that the date on which the taxpayer commenced business shall be that of any corporation which prior to the taxable year was a party with the taxpayer to a transaction described in section 445 (g) (2) (C), substituting therein July 1, 1945, for December 1, 1950. A transaction thus described in section 445 (g) (2) (C) is the acquisition by the taxpayer of a substantial part of the properties distributed on or after July 1, 1945, by another corporation if such properties constituted a substantial part of the business assets of such other corporation, and if 50 per centum or more in value of the outstanding stock of the taxpayer is owned directly or indirectly by individuals who at the time of such distribution owned directly or indirectly 50 per centum or more in value of the outstanding stock of such other corporation. The stockholders of Supreme Dairy Company on July 15, 1947, when it was liquidated, were identical in all respects with the stockholders of the petitioner at all times material hereto. All of the assets of Supreme Dairy Company were transferred to the petitioner on July 16, 1947. Those assets just before being distributed by Supreme Dairy Company had constituted all of the business assets of that corporation and upon their receipt by the petitioner constituted all of the business assets of the petitioner. The petitioner states in its brief:

It follows that although in form there was a purchase of stock and within the literal confines of the statute the petitioner acquired a substantial part of the properties distributed by the old company, and the stockholders of the old company at the time of the distribution were the same individuals who became stockholders in the new company, in substance these individuals bought assets. The steps of the transaction must be disregarded to get at its substance. In reality the purchasers never were stockholders of the old company.

In other words, the petitioner concedes that under a literal application of the statute it should not be regarded as a new corporation for the purpose of section 430(e). This concession is obviously fully justified by the facts of record.

The petitioner argues that its stockholders never intended to continue the Supreme Dairy Company but intended merely to acquire all of its assets, that form should be disregarded in favor of substance, and if that is done, then the stockholders of the petitioner never were stockholders of the old company and sections 430(e)(2)(B)(i) and 445(g)(2)(C) would not apply to rule the petitioner out as a new corporation under section 430(e). One sufficient answer to that argument is that there is no occasion to look through form to substance in order to give relief which Congress did not intend. The relief in question was intended by Congress to help a new corporation to establish a new business. Here the petitioner acquired and continued to operate a long-established business. The petitioner argues that this is not so because it intended to abandon some of the activities of the old corporation and to develop some new activities of its own. But even assuming that those were its intentions, it certainly did not start its business from scratch or develop an entirely new business. Instead, it began business by taking the full benefit of the long-established business of its predecessor and rather obviously Congress did not intend to give such a corporation relief of the kind provided in section 430(e). There is no reason to believe that Congress wanted to give relief where there was little more than a change in the owners of an existing business. Stated affirmatively, there is reason to believe that Congress intended disqualification where the old business continued without interruption, thus avoiding a difficult period of developing a new business.

Furthermore, the petitioner fails to demonstrate that it would be in any better position if it had acquired only the assets and going business of Supreme Dairy Company without its stockholders ever acquiring the stock of Supreme Dairy Company. It is not clear, for example, that sections 430(e)(2)(B)(iii) and 474(c)(1), (2), and (3) would not disqualify it for relief in that case. Section 430(e)(2)(B)(iii) refers to a purchasing corporation and a selling corporation as defined in part IV whose properties were acquired in a part IV transaction and for the taxable year or for any preceding taxable year the conditions of paragraphs (1), (2), and (3) of section 474(c) were satisfied with respect to such transaction. "Part IV" means section 474.

The acquisition of the assets of Supreme Dairy Company by the petitioner without the acquisition of Supreme Dairy Company stock by the stockholders of the petitioner would have been a transaction as

defined in section 474 (a) (1). Section 474 (c) (1) is satisified here since the selling corporation did not continue any business activities after the transaction other than those incident to liquidation and promptly liquidated in a transaction other than that described in section 461(a), and ceased existence. Section 474(c) (2), which relates to the base period of the purchasing corporation before the acquisition transaction, is satisfied since the petitioner had no such period and the assets in question were used, until distributed in liquidation, by the old corporation in the production of its income. Section 474(c) (3) requires that the business acquired in the transaction be operated by the purchasing corporation from the date of such transaction to the end of the taxable year, and that occurred here. However, it is not necessary to decide that these provisions would disqualify the petitioner for relief if it had acquired the assets without its stockholders acquiring the stock of the Supreme Dairy Company, since its stockholders did acquire the stock of the Supreme Dairy Company.

The petitioner, as it recognizes, must prove that its failure to file timely returns was due to reasonable cause and "It is not enough that it was not due to willful neglect." The petitioner argues that the addition to tax under section 291(a), as determined by the Commissioner for its failure to file timely returns, is not proper because the failure was due to reasonable cause. The record as a whole clearly shows that the failure to file timely returns was not due to reasonable cause. The officers and directors of the petitioner were well aware that the returns were long overdue and had not been filed. They seek to excuse themselves because they relied upon a "registered accountant" who was also a stockholder of the petitioner. They mention his poor physical condition but they were well aware of that at all times and if he was incompetent they did not exercise ordinary business care and prudence in failing to obtain and follow competent advice and assistance. The accountant admitted that he knew the returns should be filed, and he never advised the corporation otherwise. The petitioner did not rely upon any advice of his in failing to file timely returns. The Commissioner did not err in determining the additions to tax under section 291(a) for failure to file timely returns. *R. A. Bryan*, 32 T.C. 104, affirmed this issue 281 F. 2d 238 (C.A. 4), certiorari denied 364 U.S. 931; *Babetta Schmidt*, 28 T.C. 367, remanded other issues 272 F. 2d 423 (C.A. 9); *Home Guaranty Abstract Co.*, 8 T.C. 617. However, the Commissioner at page 9 of his reply brief makes a concession with respect to the computation of the amount of the addition which can be given effect under Rule 50.

The Commissioner also determined additions to tax under 293(a) on the ground that a part of the deficiency for each year was "due to

negligence, or intentional disregard of rules and regulations but without intent to defraud." The petitioner argues that the addition under 293(a) and the addition under 291(a) should not both be imposed in this case because the only negligence on the part of the petitioner which could give rise to any part of the deficiency for any year was its failure to file the returns and the two additions to tax should not be imposed for the same negligence. This Court held to the contrary in *Vahram Chimchirian*, 42 B.T.A. 1437, affirmed per curiam 125 F. 2d 746. Cf. *Pincus Brecher*, 27 B.T.A. 1108; *Arthur M. Slavin*, 43 B.T.A. 1100; *Richard Law*, 2 T.C. 623. The petitioner suggests that we may want to reconsider our holding in the *Chimchirian* case, in the light of *Commissioner* v. *Acker*, 361 U.S. 87. We see no reason in that case for reconsidering our prior decision. Furthermore, the failure to file timely returns was not the only negligence or disregard of rules and regulations attributable to the petitioner.

The petitioner also argues that the Commissioner erred in computing the addition to tax under section 293(a) on its total tax liability for each year without deducting therefrom the tax shown on the final return, the delinquent return, or the amount assessed for each year. Section 293(a) provides that the addition to tax is to be computed on "the total amount of the deficiency." Section 293(b) contains an identical provision. The petitioner wants to rely upon the definition of deficiency given in section 271(a) and to argue therefrom that a portion of the tax upon which the Commissioner has computed the addition in question was not a part of the deficiency and should not be included in the computation of the addition. This Court has consistently held that—

the phrase "total deficiency" as used in section 293(b) where fraud is present can only mean the amount which is the difference between the tax liability and the amount shown on the return. The return referred to undoubtedly means the original return due at the times provided by law.

(*Maitland A. Wilson*, 7 T.C. 395, 397), and this is so "regardless of the fact that a taxpayer may have paid the tax prior to the mailing of the deficiency notice." (*Aaron Hirschman*, 12 T.C. 1223, 1230.) See also *Harry Sherin*, 13 T.C. 221; *Arlette Coat Co.*, 14 T.C. 751; *Herbert Eck*, 16 T.C. 511, affirmed per curiam 202 F. 2d 750 (C.A. 2), certiorari denied 346 U.S. 822; *Middleton* v. *Commissioner*, 200 F. 2d 94, affirming a Tax Court Memorandum Opinion. The principle of those cases applies as well under section 293(a) as under section 293(b), the basis for the addition cannot be expunged by later acts, and it follows that the Commissioner did not err as alleged.

*Decision will be entered under Rule 50.*