In the Matter of the Estate of MARY DEAKEN, Deceased.

Surrogate's Court, Queens County, February 1, 1932.

PROCEEDING on accounting and for construction of a will.

*William F. Clare*, for the petitioners.

*John G. Snyder*, for Miriam Roeber Rosenblath.

*Philip Frank*, for Helen M. Deaken.

HETHERINGTON, S. Mary Deaken died leaving a last will and testament which was admitted to probate by a decree of this court on June 27, 1919. The material provisions of her will are as follows:

" II. I give, devise and bequeath to my sons John and Frank and my daughter Ella, the sum of Thirty thousand dollars in trust, to use and dispose of as hereinafter set forth.'

" III. All the rest, residue and remainder of my estate, after the establishment of this trust fund of Thirty thousand dollars, I do give, devise and bequeath in equal parts to my children, John, Frank and Ella.

" IV. I do direct my said sons John and Frank and my daughter Ella to have and to hold the aforesaid sum of Thirty thousand dollars in trust, and to invest, reinvest and change the investments thereof, and out of the net income thereof to pay over to my daughter Catherine, the sum of One hundred dollars per month as long as she remains unmarried, and the balance of said income, if any there be, to pay over yearly in equal proportions to my sons John and Frank and my daughter Ella. In case my daughter Catherine should at any time marry, I direct my trustees to pay over and distribute the principal of said trust fund in the manner and form following, to wit: First. To pay thereout to the said Catherine, a sum of money equal to the amount which each of my remaining children receives of the balance of my estate at the time of my death under subdivision III of this will, and the balance of such moneys to divide into four equal parts, and to pay over one of such parts to my daughter Catherine; one of such parts to my daughter Ella; one of such parts to my son John; and one of such parts to my son Frank, the purpose of this being that in case of

the marriage of my daughter Catherine each of my children shall share equally in my estate. In case my daughter Catherine shall not marry, then upon her decease, I direct that the said trust fund of Thirty thousand dollars or so much as remains shall be divided into three equal parts and one of such parts paid over to my son John; one to my son Frank and one to my daughter Ella.

" V. If at any time during the continuance of the trust above created the condition of my daughter Catherine shall be such that in the judgment of a majority of said trustees it shall be deemed necessary to pay a portion of the principal of said trust fund over to her, then I direct that my trustees may on such occasion or occasions pay over to the said Catherine such portion or portions of the principal of the said trust fund as in their judgment may be wise, but such payments shall not in the aggregate exceed the sum of Six thousand dollars. In case any payments shall be made under this subdivision and thereafter my daughter Catherine shall marry so that there shall be a distribution of such trust fund, such amount theretofore paid over to her shall be charged against her for the purpose of equalization in distribution.

" VI. In case of the death of my said sons John or Frank, or my daughter Ella leaving issue him or her surviving, then I direct that such issue shall take the parents share, *per stirpes*."

On October 18, 1921, a decree of final settlement of the accounts of the executor of her estate was duly made and by decree John Deaken received as trustee a fund of $30,000, as provided by the second paragraph of said will, to be held in trust for her daughter Catherine upon the terms and conditions set forth in the fourth and fifth paragraphs thereof.

John Deaken died on July 4, 1928, a resident of Bronx county, leaving a last will and testament which was admitted to probate by the Surrogate's Court of that county on October 8, 1928, in which, among other provisions, he provided for the disposition of his interest in the aforesaid trust fund of $30,000 under his mother's will, as follows:

" III. I am entitled under the will of my late mother, Mary Deaken, to one-third of the property held in trust during the life of my sister Katherine, and this property I do give and bequeath in equal shares to my nieces, Helen Deaken, daughter of my brother Frank, Miriam Roeber, daughter of my sister Ella, and my nephew William Roeber, son of my sister Ella."

Catherine Deaken is alive and unmarried. Frank Deaken died intestate on July 4, 1931, leaving a daughter Helen, as his only distributee. Ella Roeber (*née* Deaken) is alive, married and has two children, a son William and a married daughter, Miriam

Roeber Rosenblatt. The executors of John Deaken, deceased trustee under the will of his mother, are now accounting for him as such trustee. His substituted trustee has joined in such accounting and in their joint petition for a judicial settlement thereof, have requested a construction of the will so as to determine (1) whether the corpus of the trust upon the death of Catherine is presently vested in John, Frank and Ella or vested subject to be divested and letting in afterborn children, or contingent; (2) whether the death referred to in the sixth paragraph refers to a death of one or more of the named persons during the lifetime of the testatrix or at some other time, and (3) whether the excess income earned on the $30,000 trust fund is vested in John, Frank and Ella until the termination of the trust notwithstanding their deaths prior to that time.

Considering the problems in the order outlined, I will first discuss and determine the nature of the interests of John, Frank and Ella in the $30,000 trust fund. These interests are defined by the fourth paragraph and limited upon either of two events, (1) the marriage of Catherine, and (2) her death unmarried. On marriage each child of the testatrix, including Catherine, receive a one-fourth part, while on the happening of the second event, John, Frank and Ella each receive a one-third part.

Section 40 of the Real Property Law provides as follows: " A future estate is either vested or contingent. It is vested, when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates. It is contingent while the person to whom or the event on which it is limited to take effect remains uncertain." The law favors such a construction of a will as will avoid the disinheritance of remaindermen who may happen to die before the determination of the precedent estate. (*Connelly* v. *O'Brien*, 166 N. Y. 406.) Independent of the event of marriage, the remainders are vested within the terms of the statute. The only effect of Catherine's marriage is that her one-fourth interest will be let in and the interests of her sister and brothers will be reduced from one-third to one-fourth parts. In any eventuality the remainders must fall in and their time of vesting is fixed as not later than Catherine's death. The contingency of marriage does not affect the vesting of the remainders, but operates only to affect their advancement and the quantum of the shares. Language similar to that used here, " so long as she shall live or shall remain my widow," has been construed to give a present vested remainder, the payment or enjoyment of which is postponed until death or remarriage. (*Matter of Halvordson*, 137 Misc. 75.) Neither does the use of the words " pay over " and

" distribute " the principal (upon marriage) nor the direction (in the event of death unmarried) that the said trust fund " shall be divided into three equal parts " prevent immediate vesting of the remainders. The rule that where the only gift is found in a direction to divide at a future time, vesting will not take place until that time arrives (*Warner* v. *Durant*, 76 N. Y. 136; *Smith* v. *Edwards*, 88 id. 92), like all rules of construction, is subordinate to the primary canon of construction, that the construction shall follow the intent, to be collected from the whole will and that the intention of the testatrix, so ascertained, must prevail, and especially so when their application in a particular case would defeat the intention. (*Goebel* v. *Wolf*, 113 N. Y. 405.) Upon the termination of the trust the persons who take are fixed, as are their shares. This is likewise true of the residuary estate where the gift is immediate and absolute. Here the gift is not to a class but to named individuals. There is a direction to divide into three equal parts before payment. There is no uncertainty either as to the number of beneficiaries, or their fractional shares. The possibility of a reduction in the number of shares to be paid is excluded, and the presence of those factors makes it inconceivable that a contingent gift to a class or number of persons was intended. (*Matter of Lotz*, 92 Misc. 683.) The intention of the testatrix was to divide her property equally among her children and their descendants. The setting up of a trust fund for her daughter Catherine is merely an indication that the testatrix believed that her unmarried status required special protection. Upon marriage the trust terminated and the estate is directed to be divided in such a way that each child shares equally. It is evident that the testatrix intended that their interests in the corpus of the fund should vest at the time of her death, although payment was to be postponed until the termination of the trust. (*Goebel* v. *Wolf, supra; Murtha* v. *Wilcox*, 47 App. Div. 526.)

A construction of the sixth paragraph would be unnecessary except for the creation of the intermediate estate, for the general rule is that the death referred to, in the absence of any other named period, is one in the lifetime of the testator. (*Vanderzee* v. *Slingerland*, 103 N. Y. 47.) The rule applies only when the prior gift is absolute and unrestricted. It is not applicable where the first devisee or legatee simply takes a life estate, or where the context of the will contains language indicating a contrary intent. (*Fowler* v. *Ingersoll*, 127 N. Y. 472; *Matter of Baer*, 147 id. 348.) However, like all other rules of construction, which are applicable in the interpretation of wills, it is always applied in subordination to the intention of the testator which is expressed in the will.

The law favors the vesting of and equality among children in the distribution of estates, and in cases of doubtful construction it selects that which leads to such a result. (*Stokes* v. *Weston*, 142 N. Y. 433.) Here the testatrix has evidenced a strong desire for equality among her children. Upon the marriage of her daughter Catherine, she first gives her a sum equal to the amount which her sister and brothers received under the second paragraph, expressly stating her purpose to be that " each of my children shall share equally in my estate," then directs that the trust fund shall be divided among them in four equal parts, and finally in the fifth paragraph emphasizes her desire for equality by directing that any advances made to Catherine shall be charged against her " for the purpose of equalization in distribution." In the face of this desire it is difficult to believe that she intended a construction which would take away from a remainderman any part of the interest vested in him, and give it, on his decease, to his issue, and thus cut down his interest to a life estate.

Another circumstance indicating an intention that the words of contingency refer to a death in the lifetime of the testatrix is that the substitutionary clause is contained in a separate paragraph near the end of the will. It does not single out any particular gift and must be applied to all. To give it a variable meaning depending upon the nature of the gift would break down the testatrix's scheme of equality which is ever apparent throughout the will. It is my view that the intent and purpose of the paragraph in question was that the issue of any deceased child named therein should only succeed to the parent's share in the event of his or her parent dying in the lifetime of the testatrix.

In the fourth paragraph of the will the testatrix directs her trustees to pay out of the net income of the trust fund the sum of $100 per month to her daughter Catherine " as long as she remains unmarried " and the balance of such income, if any there be, to pay over yearly in equal proportions to my sons John and Frank and my daughter Ella." Unlike *Matter of Ossman* v. *Von Roemer* (221 N. Y. 381) the will here fails to reveal any intention that the death of the beneficiary was intended to mark the limit of his right to the excess income. Upon the contrary, I think that the testatrix intended that it should continue until the termination of the trust. If equality of distribution was her objective, as I believe it was, her intention will best be effected by holding that the gift of the excess income continues until the termination of the trust. The disposition of this question is governed by *Montanye* v. *Montanye* (29 App. Div. 377) and *Morgan* v. *Williams* (66 How. Pr. 139).

Proceed accordingly.