Estate of Louis Lewis, Deceased, Jennie Lewis and Elias Lewis, Executors v. Commissioner.
Estate of Lewis v. Commissioner
Docket No. 95017.
United States Tax Court
T.C. Memo 1963-331; 1963 Tax Ct. Memo LEXIS 15; 22 T.C.M. (CCH) 1732; T.C.M. (RIA) 63331; December 20, 1963
*15 Held: That under the decedent's will there passed to the surviving spouse a one-third interest in the entire net probate estate and that the value of such one-third interest is allowable as a marital deduction under section 2056 of the Internal Revenue Code of 1954. Held, further, that the petitioner is liable for an addition to tax under section 6651 of the Internal Revenue Code of 1954, for failure timely to file an estate tax return. Samuel D. Levine, for the petitioner. Robert A. Trevisani, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined a deficiency in estate tax in the amount of $76,992.30, and a deficiency of $19,248.08 in an addition to tax for failure to timely file the estate tax return. Concessions having been made by the parties, the issues remaining for decision *17 are (1) the amount of the marital deduction to which the petitioner is entitled under section 2056 of the Internal Revenue Code of 1954, and (2) whether the failure to timely file the petitioner's estate tax return was due to reasonable cause within the meaning of section 6651(a) of the Code. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. The decedent, Louis Lewis, died testate on December 25, 1956, a resident of Brooklyn, New York. The estate tax return of the Estate of Louis Lewis was filed with the district director of internal revenue at Brooklyn. The decedent, in his will, named his wife, Jennie Lewis, and his son, Elias Lewis, as executors and trustees of the trust created therein. The will, after provision for payment of debts and funeral expenses, provides in pertinent part as follows: Second: I hereby give, devise and bequeath unto my wife, Jennie Lewis, one-third of my entire estate, both real, personal or mixed. It is my intention that this shall be in lieu of any rights that she may have as my wife. Third: At the present time I own seventy (70%) per cent of the stock of LOUJEN REALTY *18 CORP. and my wife, Jennie Lewis, owns the balance of thirty (30%) per cent. This corporation is the owner of the following premises: 1734 Park Place, Brooklyn, N. Y. 175 Saratoga Avenue, Brooklyn, N. Y. 1531 East 35th Street, Brooklyn, N. Y. Fourth: At the present time I own seventy (70%) per cent of the stock of SYME REALTY CO. INC. and my wife, Jennie Lewis, owns the balance of thirty (30%) per cent of the stock. This corporation is the owner of the following premises: 567 Powell Street, Brooklyn, N. Y. One-half interest in 476 Christopher Avenue, Brooklyn, N. Y. One-half interest in 389 Riverdale Avenue, Brooklyn, N. Y. One-half interest in 405 Riverdale Avenue, Brooklyn, N. Y. Fifth: It is my intention that my wife, Jennie Lewis, and my children should receive the benefit of the net income from the following properties: 567 Powell Street, Brooklyn, N. Y. 1734 Park Place, Brooklyn, N. Y. 175 Saratoga Avenue, Brooklyn, N. Y. I therefore give, devise and bequeath unto my Trustees, hereinafter named, the stock which I own in Syme Realty Co. Inc. and Loujen Realty Corp. and direct my Trustees hereinafter named to manage the following properties: 567 Powell *19 Street, Brooklyn, N. Y. 1734 Park Place, Brooklyn, N. Y. 175 Saratoga Avenue, Brooklyn, N. Y. to collect the rents therefrom, pay all the necessary expenses in the running of the property and to pay over the net income of the aforementioned properties which would be allotted to my share of stock as hereinabove set forth to my wife, Jennie Lewis and my children, Sidney Lewis, Bertha Lewis Oberstein and Elias A. Lewis, share and share alike. Sixth: It is my wish and direction that the aforementioned properties, namely 567 Powell Street, 1734 Park Place and 175 Saratoga Avenue, all in the Borough of Brooklyn, City of New York, shall not be sold or conveyed until my son, Elias A. Lewis, shall reach the age of forty-five years and then and in that event it shall be discretionary with my Executors-Trustees either to hold and manage same or to sell the aforementioned properties, either together or separately and the proceeds thereof shall be considered part of my residuary estate to be divided as hereinafter set forth. Seventh: It is my wish and desire and I direct my Executors-Trustees that there shall be an accounting of the income and expenses of the above mentioned properties *20 to be held by them monthly and that the Executors-Trustees shall pay over to my wife and children the net profits each month earned in the running of the aforementioned properties. Eighth: The Loujen Realty Corp. is the owner of premises 1531 East 35th Street, Brooklyn, N. Y. It is my wish and I hereby direct my Executors-Trustees who are holding the stock of the aforementioned corporation not to sell premises 1531 East 35th Street, Brooklyn, N. Y. during the lifetime of my wife, Jennie Lewis. I further direct that my wife, Jennie Lewis, shall have the right to live in the said premises rent free during her lifetime. All of the expenses incurred in running this property shall be paid by the Loujen Realty Corp. and not by my wife, Jennie Lewis. Upon the death of my wife, Jennie Lewis, I direct my Executors-Trustees to convey said premises 1531 East 35th Street, Brooklyn, N. Y. to my son, Elias A. Lewis, without any consideration therefore and the mortgage which I hold shall be satisfied by my Executors-Trustees without any consideration therefore. Ninth: All the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situate, of which I shall be seized or *21 to which I shall in any way be entitled at the time of my death, or over which I shall have the power of testamentary disposition at my decease, I give, devise and bequeath unto my children, Sidney Lewis, Bertha Lewis Oberstein and Elias A. Lewis, share and share alike. Tenth: In the event that any of my children should predecease me leaving children surviving them, then and in that event, I direct that the share due to the said predeceased child shall go to their children living at the time of my death per stirpes and not per capita. Eleventh: It is my intention that the term "rest, residue and remainder of my estate" as used hereinabove shall include any monies which may come into the estate after any of the premises, owned by the corporations in which I own stock, shall have been sold and the corporations liquidated so that the stock which I own in the aforementioned corporations, namely Loujen Realty Corp. and Syme Realty Co. Inc. shall receive a liquidating dividend. Twelfth: For the purposes of settling my estate and carrying out the provisions of this Will and Testament, I hereby authorize and empower my said Executors-Trustees to sell and convey any part or all of my *22 estate at public auction or private sale, without court order, on such terms as my said Executors-Trustees in their uncontrolled discretion may deem advisable for the best interests of my said estate and to execute such instruments as may be necessary and proper to effectuate such purposes. The gross estate of the petitioner consisted of the following assets: Value as of Decem-
Asset
ber 25, 1956
Stocks
$104,573.65
Mortgages, notes and cash
62,074.19
Insurance
18,513.23
Jointly owned property
31,060.00
Other miscellaneous property
1,750.00
$217,971.07 The stocks listed above consisted of stock of Loujen Realty Corporation having a value of $54,571.44 and stock of Syme Realty Corporation having a value of $50,002.20. Of the total insurance proceeds of $18,513.23, the decedent's surviving spouse, Jennie Lewis, was the named beneficiary of $2,244.86, and the three children were the named beneficiaries of the rest. The decedent's surviving spouse was not a co-tenant with the decedent in any of the above-listed jointly owned property. The petitioner had funeral and administrative expenses totaling $16,798.04. The decedent owed debts of $447.45 at the *23 time of his death. In the estate tax return where there was claimed a marital deduction in the amount of $57,696.76. [1] In the notice of deficiency the respondent determined that the maximum marital deduction allowable to the petitioner was $8,935.57. Addition to Tax The surviving spouse, Jennie Lewis, and the decedent's sons, Elias A. Lewis, qualified as executors of the estate in the Surrogate Court of Kings County, New York on January 31, 1957. They filed with the respondent on Form 704, dated June 6, 1957, notice of their qualification as executors of the decedent's estate. Such Form 704 contains a statement that failure to file a required return on Form 706 within 15 months from the date of death may render executors and persons in possession *24 of the decedent's property liable for penalties. At the time of the death of the decedent the surviving spouse and Elias Lewis retained Benjamin A. Smith, a certified public accountant, to do all the work connected with the preparation of the estate tax return. Shortly after the decedent's death Smith commenced accumulating the data necessary to prepare and file such return. He had the full cooperation of the executors of the estate. During his lifetime the decedent's principal business activity consisted of owning and operating 5 or 6 real estate properties. For nearly 40 years Smith had done the accounting work for the decedent. On March 25, 1956, Smith suffered a heart attack which incapacitated him for 8 or 10 weeks. Shortly after he commenced accumulating material for the preparation of the estate tax return, Smith suffered another coronary attack and his family so advised the executors of the decedent's estate. Such executors visited Smith in the hospital and at his home. Thereafter, from time to time throughout the years 1956, 1957, and 1958 he suffered recurrences of this illness, which required periodic confinement in a hospital or at his home and limited his capacity *25 to work. As a consequence he visited his office only occasionally and did not spend very much time there. He had two assistants who took care of his auditing work, but who did not engage in the specialized work of preparing estate tax returns. The executors indicated to Smith their concern about the filing of the estate tax return and requested that he expedite its preparation. Smith in effect told them that whether he prepared the return in time would depend upon whether it was possible in his state of health. The estate tax return was filed on October 7, 1958. It was signed by the executors on October 6, 1958. Smith also signed the return on this date as the agent who prepared it. In the notice of deficiency the respondent determined a "25 percent delinquency penalty * * * under the provisions of Section 6651 of the Internal Revenue Code of 1954 for failure to file the estate tax return within the time prescribed by law," in the total amount of $21,753.47, which included an amount of $2,505.39 previously assessed. The failure to file timely the estate tax return was not due to reasonable cause. Opinion The parties have stipulated the values of the *26 various properties making up the gross estate of the decedent. They are also in agreement that the petitioner is entitled to a marital deduction in the amount of $2,244.86, representing insurance proceeds to which the surviving spouse was entitled. The controversy relates to the amount of the marital deduction to which the petitioner is entitled under section 2056 of the Internal Revenue Code of 1954, [2] on account of any interest in property which passed to the surviving spouse pursuant to the will. *27 State law is governing in the determination of the nature and extent of interests passing under wills. Morgan v. Commissioner, 309 U.S. 78, and Grinnell v. Commissioner, (C.A. 2) 70 F. 2d 705, affd. 294 U.S. 153. The parties are in accord that here the law of New York is governing. It is well settled that the testator's intent, as derived from his will as a whole, is determinative with respect to the interest which passes. In re Cowee's Will, 120 N.Y.S. 2d 674; and In re Deaken's Will, 257 N.Y.S. 839. It is also well established that effect is to be given, if possible, to all the provisions of a will. Taggert v. Murray, 53 N. Y. 233. And the cases consistently hold that where provision is made in the will for a surviving wife such provision must receive a liberal construction in her favor. Moffett v. Elmendorf, 46 N.E. 845; In re Joseph's Will, 173 N.Y.S. 2d 207, affd. 181 N.Y.S. 2d 193; and In re Moss' Will, 244 N.Y.S. 47. In paragraph second of the will, the decedent gave, devised, and bequeathed to his wife, Jennie, "one-third of my entire estate, *28 both real, personal or mixed" and stated that it was his intention that this should be "in lieu of any rights that she may have as my wife." The petitioner contends that under this provision of the will there passed to the surviving spouse at the date of the decedent's death a one-third interest in the net probate estate (consisting of stock of Loujen Realty Corporation and Syme Realty Corporation having a total of $104,573.65, mortgages, notes, and cash of a value of $62,074.19, and other miscellaneous property of a value of $1,750, less funeral and administrative expenses and debts totaling $17,245.49). The net value of the probate estate was $151,152.35, and the petitioner contends that the marital deduction on account of property passing under the will amounts to $50,384.12. The respondent, on the other hand, takes the position that since the decedent's stock in Loujen Realty Corporation and in Syme Realty Corporation was, in accordance with the terms of paragraphs fifth through eighth of the will, to be placed in trust for the benefit of the surviving wife and the three children, the effect of paragraph second was to give the surviving wife a one-third interest in the probate *29 estate decreased by the value of the stock of those two corporations. Thus, the respondent contends that the marital deduction on account of the probate estate passing to the surviving spouse is $15,526.23 (which consists of one-third of the total of mortgages, notes, and cash, having a value of $62,074.19, and other miscellaneous property having a value of $1,750, less funeral and administrative expenses and debts totaling $17,245.49). We have carefully considered the provisions of the will in the light of the principles established in the cases cited above. It is our conclusion that the decedent intended by the provisions of paragraph second to give his surviving wife an interest in the property passing by will equal to the interest to which she would be entitled under the statutory law of New York, and thus obviate an election on her part to take against the will. Indeed, in paragraph second the testator gave her one-third of his "entire estate, both real, personal or mixed" and stated that this was in lieu of any rights that she might have as his wife. Under section 18 of the Decedent Estate Law of the State of New York (McKinney's Consolidated Laws of New York, Annotated, chapter *30 13, section 18), a testator's surviving spouse is provided a right of election to take his or her share of the estate as in intestacy, with certain exceptions. Under the intestacy provisions of the New York statute (section 83 of the Decedent Estate Law, McKinney's Consolidated Laws of New York, Annotated, chapter 13, section 83), the surviving wife under the circumstances here presented would have been entitled to a one-third part of the probate estate after payment of all debts and expenses. As indicated in In Re Goldsmith's Estate, 30 N.Y.S. 2d 474, in the case of intestacy, when the decedent is survived by a spouse and children, the spouse is entitled to a distribution equal to one-third of the value of the probate estate, after deduction of funeral and administration expenses and debts. Thus, we think that it was the testator's intention, under the provisions of paragraph second, to give the wife an interest equal to one-third of the entire net probate estate. The fact that in paragraphs fifth to eighth of the will provision was made for the creation of a trust to hold the decedent's stock of the Loujen Realty Corporation and the Syme Realty Corporation for the *31 benefit of the wife and the three children does not militate against this conclusion. Such subsequent provisions in the will do not have the effect of cutting down the interest clearly created by paragraph second. In re Kelly's Will, 86 N.Y.S. 2d 441, and cases cited therein. Such interests as were provided for the surviving wife by paragraphs fifth through eighth were in addition to the interest created by paragraph second. It should be pointed out also that it is evident that the testator intended that a one-third share be paid to the surviving spouse in all events, since by paragraph twelfth he authorized the executors-trustees to sell any part or all of the estate (which would include the stock placed in trust), without court order, for the purpose of settling the estate and carrying out the provisions of the will. The respondent alternatively contends that by paragraph second the testator intended to give his surviving wife an aggregate of one-third of his estate, such interest to include the value of the interest created for her by the testamentary trust, citing In re Willoughby's Will, 45 N.Y.S. 2nd 177, affd. 52 N.Y.S. 2nd 793. He *32 therefore contends that the marital deduction must be reduced by the value of these subsequently provided interests, inasmuch as they constitute terminable interests within the meaning of section 2056(b) of the Code, and as such are not eligible for the marital deduction. It is true that the interests of the wife created by paragraphs fifth through eighth of the will are terminable interests and not eligible for the marital deduction, and the petitioner so concedes on brief. However, we have carefully examined the case of In re Willoughby's Will, supra, but find that the factual situation there presented was different from that here involved. The instant case more closely resembles In rekelly's Will, supra, in which In re Willoughby's Will, supra, was distinguished. We think that here, as in In re Kelly's Will, supra, the testator intended to give the wife an interest in addition to the interest she would have taken in the event of intestacy. It is our conclusion that the petitioner is entitled to a marital deduction, in addition to the above-mentioned amount of $2,244.86, in the amount of one-third of the net probate estate, or $50,384.12. *33 Addition to Tax The decedent died on December 25, 1956. Under section 6075 of the Internal Revenue Code of 1954 the estate tax return was required to be filed within 15 months after the decedent's death, which would be on or before March 25, 1958. It was not filed until October 7, 1958. The question presented is whether, as determined by the respondent, the petitioner is liable, under section 6651 of the Internal Revenue Code of 1954, [3] for an addition to tax for failure to timely file such return. *34 The respondent contends that the imposition of the addition to tax is justified because failure to file was not due to reasonable cause within the meaning of the statute; the petitioner, on the other hand, claims that the delay was due to reasonable cause. Apparently the respondent does not contend that the failure to timely file the return was due to willful neglect. In any event, it is well settled that even in the absence of willful neglect, an addition to tax must be made unless the failure to file has been shown to be due to reasonable cause. Charles E. Pearsall & Son, 29 B.T.A. 747, and Beck Chemical Equipment Corporation, 27 T.C. 840. Reasonable cause has been defined to mean the exercise by a taxpayer of ordinary business care and prudence. Beck Chemical Equipment Corporation, supra; Calvert Iron Works, Inc., 26 T.C. 770; and Robinson's Dairy, Inc., 35 T.C. 601, affd. (C.A. 10) 302 F. 2d 42. Section 301.6651-1(a)(3) of the Procedure and Administration Regulations provides: "If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed *35 time, then the delay is due to a reasonable cause." Whether a failure to file timely was due to reasonable cause is primarily an issue of fact to be decided upon all the facts and circumstances in a particular case. Coates v. Commissioner, (C.A. 8) 234 F. 2d 459, affirming a Memorandum Opinion of this Court. The petitioner claims that the executors did exercise ordinary business care and prudence in that they retained and relied upon Benjamin A. Smith, a certified public accountant who had done accounting work for the decedent for about 40 years, to timely prepare and file the return. The respondent takes the position that reliance by the executors upon Smith, particularly in view of his illness, of which they were aware, did not constitute the exercise by them of the requisite care and prudence. The responsibility for filing the estate tax return was upon the executors. Section 6018(a) of the Internal Revenue Code of 1954. And it has been held that with respect to the preparation and filing of the return an executor has a duty of vigilance and promptness, that such duty is not a delegable one, and that therefore as a general proposition merely *36 employing an attorney does not meet the required standard of care. Ferrando v. United States, 245 F. 2d 582, affirming Ferrando v. United States, (D.C.N.D. Cal., June 4, 1956). Such holding is consistent with the holdings in other cases that taxpayers may not in effect shift their duty to file declarations of estimated tax and income tax returns to an accountant or an attorney by claiming that their failure to timely file was due to reasonable cause merely because the accountant or the attorney did not timely prepare the proper returns and advise them to file. See R. A. Bryan, 32 T.C. 104, affd. (C.A. 4) 281 F. 2d 238, certiorari denied 364 U.S. 931; Hyman B. Stone, 22 T.C. 893; Home Guaranty Abstract Co., 8 T.C. 617; and Coates v. Commissioner, supra. Based upon a consideration of all the evidence here presented it is our conclusion, and we have found as a fact, that the failure of the petitioner to file timely the estate tax return was not due to reasonable cause. The evidence shows that the executors were aware of the requirement of filing a return. They engaged Smith for the purpose *37 of preparing the return and on June 6, 1957, they signed Form 704, notifying the respondent that they had qualified as executors. The executors had knowledge, either at the time they engaged Smith or shortly thereafter, that he had had a heart attack and they also knew that he was incapacitated from time to time by his heart condition. Neither of the executors testified, but Smith testified that the executors showed concern about the filing of the return, and that they asked him to "hurry up with it". He testified that "I told them that the moment I got a chance I would probably prepare it in time for them, if possible, health permitting". This statement, we think, should have put the executors on notice that Smith might not, due to the state of his health, be able to prepare the return on time. [4] Despite this, it would seem from the evidence that they did not take any steps toward seeing that Smith prepared the return on time, or acquiring other assistance in the preparation of the return, or obtaining an extension of time for filing. Smith testified to the effect that the executors did not know the final date for filing the return, and from this we gather he did not advise them *38 as to such date. However, it seems probable that the executors had some general knowledge as to the time the return had to be filed, since the Form 704 which they signed on June 6, 1957, clearly stated that failure to file the estate tax return within 15 months from the date of the death of the decedent might render the executors liable for a penalty. In any event, we think it was incumbent upon the executors to ascertain the final date for filing in order to fulfill their duty of seeing that a return was timely prepared and filed. On brief the petitioner states thatsmith's testimony implies that the executors understood from Smith that he had obtained an extension of time for filing. However, Smith did not so testify, and we do not see any such implication in his testimony. We cannot conclude that the executors exercised ordinary business care and prudence under the circumstances. The petitioner cites In re Fisk's Estate, (C.A. 6) 203 F. 2d 358, for the proposition that as a matter of law the reliance upon an *39 attorney or an accountant for the making out and filing of tax returns constitutes reasonable care. However, we think that that case is not applicable where, as here, the accountant's health and his statement to the executors were sufficient to put the executors on notice that he might not be able to prepare the return in time. The petitioner also relies upon cases which involved complicated factual situations raising serious questions as to whether the taxpayer was required by law to file a return, and in which it was held that reliance upon an accountant or an attorney constituted reasonable cause to believe that a return was not required to be filed. See Hatfried, Inc. v. Commissioner, (C.A. 3) 162 F. 2d 628; Haywood Lumber & Mining Co. v. Commissioner, (C.A. 2) 178 F. 2d 769; and Reliance Factoring Corporation, 15 T.C. 604. But that is not the situation here presented. Both the executors and Smith knew that an estate tax return was required to be filed. It is our conclusion that the petitioner is liable for an addition to tax under section 6651 of the Code for failure to timely file the estate tax return. The amount thereof will be computed *40 under Rule 50. Decision will be entered under Rule 50. Footnotes
1. The claimed marital deduction consisted of: Insurance in the amount of $2,244.86; an amount of $981.33, stated to be the present value of the surviving spouse's 25% life estate in trust property; an amount of $45,614.70, stated to be 1/3 of the value of the decedent's stock of Loujen Realty Corporation and Syme Realty Corporation; and an amount of $8,855.87, stated to be 1/3 of the value of decedent's mortgages, notes, and cash.↩
2. BEQUESTS, ETC., TO SURVIVING SPOUSE. (a) Allowance of Marital Deduction. - For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate. * * *
(c) Limitation on Aggregate of Deductions. - (1) General Rule. - The aggregate amount of the deductions allowed under this section (computed without regard to this subsection) shall not exceed 50 percent of the value of the adjusted gross estate, as defined in paragraph (2).↩
3. Section 6651(a) provides as follows: In the case of failure to file any return required under authority of subchapter A of chapter 61 * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.↩
4. Smith testified that he made every effort to prepare the return in time, but that he could not do so, and that the late filling was due to his illness.↩