Alfred W. Halling and Opal L. Halling v. Commissioner.
Halling v. Commissioner
Docket No. 6710-66
United States Tax Court
T.C. Memo 1968-232; 1968 Tax Ct. Memo LEXIS 66; 27 T.C.M. (CCH) 1151; T.C.M. (RIA) 68232; October 8, 1968. Filed Cyrus A. Johnson, Suite 800, 455 Capitol Mall Bldg., Sacramento, Calif., for the petitioners. Gordon B. Cutler, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined deficiencies and additions to tax in the income taxes of petitioners for the following years in the respective amounts set forth below: *10 Addition to tax
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
1958
$965.47
$1,328.73
$265.75
1960
911.77
2,069.97
413.99
1961
351.35
872.56
174.51
1962
338.70
1,216.95
243.39
1963
579.86
144.96
All issues raised by the pleadings have been received by stipulation of the parties with the exception of (1) the additions to tax for each year for failure of the taxpayers to file timely *67 income tax returns and (2) the additions to tax for 1958, 1960, 1961, and 1962 on the ground that the underpayment of tax for each year was due to petitioners' negligence or intentional disregard of the respondent's rules and regulations. Findings of Fact Such facts as have been stipulated are found accordingly. At all times material, petitioners were husband and wife. As of December 27, 1966, the date the petition herein was filed, petitioners' legal residence was Redding, California. Alfred W. Halling hereinafter is called "petitioner." Petitioners filed their joint Federal income tax returns for each of the taxable years 1958 through 1963 with the district director of internal revenue, San Francisco, California. on March 26, 1965. Pursuant to petitioner's request by letter dated May 9, 1960, the district director granted to petitioner an extension of time within which to file his Federal income tax return for the taxable year 1959 to June 15, 1960. Petitioners also filed an application for extension of time for filing Federal income tax returns dated April 14, 1962, requesting an extension of time within which to file their income tax returns for the taxable year 1961 *68 to June 15, 1962. In 1948, petitioner was approximately 45 years old. Since August, 1948, petitioner has owned and operated a retail jewelry store in Redding known as "Halling Jeweler." In August, 1957, he opened a separate discount store, also in Redding, known as "Buyer's Associates." The latter store had financial problems and was closed by petitioner in April, 1959. Thereafter, he returned to a one-store operation. At about the time petitioner opened his jewelry store, he retained Chester A. Nelson (hereinafter called Nelson) as his accountant. Nelson performed bookkeeping services for petitioner and prepared his State and Federal tax returns and also prepared declarations of estimated tax for petitioner. Although Nelson maintained petitioner's books of account and records in a current condition, petitioner usually was slow in furnishing him year-end figures for inventory, bad debts, and accounts receivable. Consequently, Nelson for some years was forced to secure extensions of time for the filing of petitioner's income tax returns. When petitioner opened Buyer's Associates, Nelson advised him to keep separate records for the two businesses. Petitioner followed this advice *69 except for records of inter-store merchandise transfers. Consequently Nelson was unable to separately determine the profits or losses of each of the businesses. Sometime in 1958, Nelson discontinued his accounting services for petitioner. His reasons therefor were that the commingling of the merchandise of the two businesses was creating so complex a bookkeeping and accounting situation that he was dissatisfied with the ways things were going and that petitioner owed him a little money and the account was delinquent. After discontinuing his accounting services, Nelson did no work for petitioner in 1959 and did not secure or arrange for the extension for filing of petitioner's 1959 income tax return. Either in 1958 or 1959, a fire occurred in one of petitioner's business establishments which destroyed some of his business records. The exact time of such fire and the extent to which such records were damaged are not otherwise disclosed in this record. In April 1960, as a result of petitioner's financial problems in respect of his discount 1153 business, he consulted an attorney. On April 14, 1960, pursuant to advice of his attorney, he filed a petition in proceedings for *70 arrangement under Chapter XI of the United States Bankruptcy Act. The proceedings terminated in May 1964 upon petitioner's final satisfaction of debts owing to his unsecured creditors (whose claims totaled approximately $40,000). The schedules and statements attached to the petition for arrangement disclosed that no Federal or State income taxes were due and that the last Federal and State income tax returns filed were for the taxable years 1957 and 1958, respectively. At about the time the petition for arrangement was filed, Nelson was requested to act as petitioner's accountant in the arrangement proceedings. Nelson, however, refused to do so since he had discontinued his accounting services and had no desire to become involved. On April 14, 1960, an order was entered in the bankruptcy proceedings authorizing petitioner, pending further order of the court, to remain in possession of his assets and to conduct and operate his business. An order confirming the arrangement was entered by the bankruptcy court on July 21, 1960, providing for a monthly amount to be set aside for paying petitioner's unsecured creditors and the disbursement to such creditors of such amounts, the retaining *71 of one Berner or such other accountant as might be approved by a creditors' committee to set up a bookkeeping system for petitioner, and to countersign all expense checks except for dividends to creditors. Berner was also directed to prepare and submit to the creditors' committee monthly a "Statement of Operations" for the previous month. The order further provided for an amount of $600 to be withdrawn by petitioner monthly for living expenses and other specified amounts to cover certain fixed obligations and secured indebtednesses. Pursuant to the order, Berner was appointed as petitioner's accountant. The appointment terminated on August 25, 1963, when Berner died. During the appointment period, petitioner paid Berner for accounting services approximately $145 per month. Following his appointment, Berner obtained petitioner's books of account and records. Although he was aware of the condition of petitioner's books and records and his responsibility for preparation of petitioner's income tax returns, his major response to the latter matter normally was a matter of delay and the filing of an application for extension. During the arrangement proceedings, Berner prepared only *72 two financial statements for petitioner as required by the order of the bankruptcy court. The first covered the period April 16, 1960, to July 31, 1960, and showed a net operating profit (before income tax) of $7,776.49 and the second covered the period April 14, 1960, to September 30, 1960, and showed a net operating profit (before income tax) of $12,270.26. Following Berner's death, petitioner engaged Eugene Greenwell, CPA, in Redding to handle his accounting and tax matters. Greenwell ultimately prepared petitioner's income tax returns for the taxable years 1958 through 1963. At no time during the arrangement proceedings did petitioner discuss tax affairs or his lack of Federal income tax returns for the taxable years 1958 through 1963 with his attorney except as set forth in his petition for arrangement. Nor did petitioner at any time discuss with his attorney or the referee in bankruptcy Berner's failure to prepare petitioner's income tax returns. During 1958 through 1963, petitioner was never advised by any accountant or attorney that he did not have to file income tax returns. Nor did he receive any advice as to his right, either to hire or refrain from hiring, an accountant *73 other than Berner, or that he was not legally empowered or permitted to prepare his own income tax returns. During the years at issue, other public accountants were available and practicing in Redding. Although since 1955 petitioner has been ill, to an extent, requiring the care and treatment of a physician, and in 1960 was operated on to relieve a vascular condition, and in 1963 was hospitalized for a period as the result of a stroke, he also continued to operate and manage his business affairs. Petitioners' failure to timely file their joint Federal income tax returns for the taxable years 1958, 1960, 1961, 1962, and 1963 was not due to reasonable cause, but to willful neglect. Part of the underpayment of taxes for the taxable years 1958, 1960, 1961, and 1962 was due to petitioners' negligence. 1154 Opinion As we understand petitioner's briefs and particularly his reply brief, he in effect admits that each of the reasons advanced by him as an excuse for failure to timely file his income tax returns for the years at issue, taken by itself fails to establish reasonable cause or lack of willful neglect within the meaning of section 6651 [1] and section 6653 [2] of the Internal Revenue Code *74 of 1954, respectively. His contention is, however, that all of the advanced reasons taken together constitute such reasonable cause and negate a conclusion that his failure was due to willful neglect. We think the record clearly establishes that petitioner was aware of the due date of each of his returns, was aware of the fact that each due date had elapsed without the filing of a return, was concerned because of such nonfiling, but did not exercise ordinary business care and prudence within the meaning of section 301.6651-1(a)(3), [3] Proced. & Admin. Regs., in response to such awareness. *75 It is moreover apparent that petitioner's theory of collectivity of causes is fundamentally unsound on the facts contained in this record. It is true that petitioner was during all years at issue suffering varying degrees of ill h(alth,8but oth(r events which he contends constituted cumulatively, reasonable cause, did not exist in each year. His original accountant's refusal to render further services for him occurred only once and that in 1958. Petitioner's belief that, due to the failure of his Buyer's Associates business and a resulting loss, he would probably not owe a tax cannot under any theory excuse petitioner's nonfiling of his returns. The institution of bankruptcy proceedings did not occur until April of 1960. From the time petitioner's original accountant ceased rendering services for him until July 21, 1960, no one had been approached by him for the purpose of having his returns for 1958 and 1960 prepared. The ffire which destroyed a portion of petitioner's business records occurred either in 1958 or 1959 and it is not shown that the lack of such records [4] had any material delaying effect upon the preparation of any of his income tax returns. For lack of evidence to *76 the contrary we find their destruction had no effect thereon for years at issue subsequent to the destruction. As for petitioner's excuse which is based upon his reliance upon the accountant who was appointed by the bankruptcy court, we think it also fails to amount to reasonable cause or to demonstrate a lack of willful neglect. The regulation hereinbefore set forth in the margin provides one test for determining reasonable cause which is that his actions in connection with the filing of his returns establish that he has exercised ordinary business care and prudence. The record is replete with evidence that he did not do so. Petitioner has, with the exception of the failure of Buyer's Associates, been a successful businessman and has at all times been aware of his duty to prepare and file his Federal income tax returns. Indeed, after the appointment of an accountant by the bankruptcy court in July of 1960, one of his first acts was to acquaint the accountant with his worry over the fact that his return for 1958 had not been prepared or filed *77 and to engage the accountant to prepare that and future returns. This accountant assured petitioner he would do so but, as a matter of fact, neglected to do so for 1155 any year from 1958 through 1963, inclusive. Such returns were finally in 1965 prepared by another accountant and filed by petitioner. As each due date for the filing of a return passed without the preparation or filing of any of them, petitioner was aware of the fact and became increasingly worried on that account, yet he did nothing which would be expected of one using ordinary business care and prudence. He was aware that the accountant appointed by the bankruptcy court had not prepared any return for him for any year through 1963, yet he neglected to obtain another accountant's assistance when the record indicates such assistance was available. We think petitioner also must have been aware that such extensions of time as he had obtained or which had been applied for by this account had either been allowed to lapse without the preparation or filing of his returns or no extension had been granted. The question in this case does not involve whether tax returns are to be filed, but rather when returns are to be filed. *78 Cases involving the former question are not pertinent with respect to the latter. As we recently said in Estate of Frank Duttenhofer, 49 T.C. 200 (1967), a case involving late filing of an estate tax return where the taxpayers had relied upon an attorney to prepare and file the return: This case only involves a question of calendar dates [due date for estate tax return] and we do not think that because the petitioners, knowing a return had to be filed, relied on an attorney, competent or not, to file the return, excuses late filing. Under these facts, we hold that petitioners cannot avoid the penalty for delinquent filing simply because they hired a lawyer, and turned everything over to him. Upon consideration of all the facts we think it is clear that petitioner's failure to timely file the tax returns here involved was not due to reasonable cause but was due to his willful neglect and we find for respondent on this issue. For lack of any evidence to show otherwise, we must sustain the respondent's addition to petitioner's income tax under section 6653(a). The evidence which sustains respondent's determination on the first issue is all we have before us. His *79 negligence in underpaying his taxes for the years at issue is clearly established by that evidence and this is sufficient, lacking contrary proofs, to support respondent's determination. Robinson's Dairy, Inc., 35 T.C. 601, affd. 302 F.2d 42 (C.A. 10, 1962); Varhram Chimchirian, 42 B.T.A. 1437 (1940), affd. per curiam 125 F.2d 746 (C.A.D.C., 1942). Because of concessions by both parties Decision will be entered under Rule 50. Footnotes
1. SEC. 6651. FAIILURE TO FILE TAX RETURN. (a) Addition to the Tax. - In case of failure to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), of subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor, (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate. ↩
2. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respct to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. ↩
3. SEC. 301.6651-1(a)(3) *** If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause.↩
4. The record is not only unclear as to the time of destruction of the records but is silent as to the identity and extent thereof.↩