WILLIE C. REGISTER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Register v. Commissioner
Docket No. 41952-84.
United States Tax Court
T.C. Memo 1988-390; 1988 Tax Ct. Memo LEXIS 421; 55 T.C.M. (CCH) 1647; T.C.M. (RIA) 88390; August 22, 1988. *421 P was an officer in the Air Force. No tax was withheld from P's Air Force wages. P failed to file his income tax returns for each of the years in issue and offered no explanation or proof that his failure to file was due to reasonable cause. P now claims that he is entitled to various deductions for each of the years in issue. Held, P has failed his burden of proving that he is entitled to any deductions he claims except for a short-term capital loss for failure to exercise a silver option, $ 4.76 in unreimbursed travel expenses and a medical transportation deduction. Held further, P is liable for additions to tax under I.R.C. sections 6651(a), 6653(a) and 6654(a) for each of the years in issue. Willie C. Register, pro se. Kimberly Mitchell-Bott, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Chief Judge: Respondent determined deficiencies in petitioner's income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a) [1]
Sec. 6653(a)
Sec. 6654(a)
1979
$ 6,354.84
$ 1,547.71
$ 2,434.56
$ 257.26
1980
8,336.81
2,022.41
2,794.30
512.56
1981
9,293.00
2,323.25
2,208.93
714.07
After concessions, the issues for decision are (1) whether petitioner has substantiated certain partnership losses and other deductions that he claimed for the years in issue; and (2) whether petitioner is liable for the additions to tax as determined by respondent. *428 Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner was a resident of Fair Oaks, California, at the time the petitioner in this case was filed. During the years in issue, petitioner was married to Pearl C. Register, and the couple had three minor children. During the years in issue, petitioner was an officer in the Air Force. In 1979 and 1980 petitioner performed his Air Force duties by teaching ROTC courses at Memphis State University and recruiting at colleges and high schools. In addition to his wages from the Air Force, petitioner received wages from Memphis State University in 1979 and 1980 for teaching courses other than ROTC courses. Petitioner also was an advisor to an Arnold Air Society group and an Angel Flight group at Memphis State University and worked with a charitable organization known as the Evening of the Soul Foundation in 1979 and 1980. The Evening of Soul Foundation was an organization that was not related to Memphis State University. Petitioner received an assignment from the Air Force to go to Korea in 1980. Petitioner's tour of duty in Korea *429 was for one year, and in 1981 petitioner received another assignment from the Air Force to move to California. Petitioner did not file tax returns and did not pay income tax or estimated tax for the years in issue. Petitioner's wages from the Air Force in 1979, 1980 and 1981 were $ 22,928.00, $ 25,834.30 and $ 30,105.78, respectively. No tax was withheld from petitioner's Air Force wages during any of the years in issue. Petitioner also received wages from Memphis State University in 1979 and 1980 in the respective amounts of $ 960 and $ 1,560. In 1979 $ 164 was withheld and in 1980 $ 247.18 was withheld from his wages from Memphis State University. In 1980 petitioner also received $ 540 in wages from International Education Foundation from which no tax was withheld. The parties have stipulated the amounts of income petitioner should have reported and many deductions that should have been allowed for the years in issue. Many of the controversies in this case concern a number of partnership losses and other deductions that petitioner now claims for the years in issue. Petitioner bears the burden of proving his entitlement to the losses and deductions he claims. Rule 142(a). *430 For convenience, our remaining findings of fact and opinion will be combined by item in controversy. Partnership Losses Attributable to M.R. Publishing
Petitioner claims partnership losses attributable to M.R. Publishing for the years 1979 and 1980 in the respective amounts of $ 3,900 and $ 4,300. In determining his income tax, a partner must take into account his distributive share of income, gains, losses, deductions and credits from a partnership of which he is a member. Section 702(a). The character of any item of income, gain, loss, deductions or credit included in a partner's distributive share is determined as if the item were realized from the source from which it was realized by the partnership or incurred in the same manner as it was incurred by the partnership. Section 702(b). A partner may deduct his distributive share of partnership losses only to the extent of the adjusted basis of his interest in the partnership at the end of the taxable year in which the loss occurred. Section 704(d). Section *431 705(a) provides in pertinent part: (a) GENERAL RULE. -- The adjusted basis of a partner's interest in a partnership shall * * * be the basis of such interest determined under section 722 (relating to the contributions to a partnership) * * * (1) increased by the sum of his distributive share for the taxable year and prior taxable years of -- (A) taxable income of the partnership as determined under section 703(a), [and]
(B) income of the partnership exempt from tax under this title, * * * (2) decreased (but not below zero) by distributions by the partnership as provided in section 733 and by the sum of his distributive share for the taxable year and prior taxable years of -- (A) losses of the partnership * * * Petitioner claims that he was a partner in M.R. Publishing, a partnership formed to publish the magazine, Memphis Reflections. To establish his participation in publishing the magazine, petitioner offered into evidence a copy of the preview issue of the magazine, dated April, 1980. Page 3 of the magazine contains the following statement: Reflections is a monthly publication of Memphis Reflections, Inc., James Rice, President. Copyright Reflections by M.R. *432 Publishing Company, Inc. From this evidence, it appears that M.R. Publishing was a corporation and not a partnership. If M.R. Publishing was a corporation, petitioner is not entitled to deduct his share of the publishing company's losses. [2]
Petitioner has failed to present evidence that M.R. Publishing was a partnership and not a corporation. Petitioner failed to produce any books or records of M.R. Publishing, nor did petitioner produce a complete tax return for the publishing company for the years 1979 and 1980. To substantiate his entitlement to deduct his share of M.R. Publishing's losses, petitioner provided Forms K-1 for the years 1979 and 1980. The Forms K-1 provided by petitioner to substantiate his entitlement to losses incurred by M.R. Publishing are not credible. The Forms K-1 are incomplete and contain statements that are inconsistent with petitioner's testimony. For example, petitioner testified that the partnership began in 1979, but the Form K-1 submitted for the year 1979 reflects a *433 capital account at the beginning of the year. Petitioner also claims that he made capital contributions to M.R. Publishing in 1979, but the Form K-1 for the taxable year 1979 shows that no capital was contributed. Petitioner provided cancelled checks to substantiate his contributions to M.R. Publishing. Although petitioner claims that he contributed $ 3,900 to M.R. Publishing in 1979 and $ 4,300 in 1980, the cancelled checks he produced to substantiate his contributions totaled only $ 1,600.15 for 1979 and $ 962.50 for 1980. However, because petitioner has failed to establish that only losses were incurred or that M.R. Publishing was a partnership and not a corporation, we hold that he is not entitled to deduct any amounts attributable to losses claimed through M.R. Publishing for the years in issue. Partnership Losses Attributable to Professional Janitorial Service
Petitioner claims partnership losses attributable to Professional Janitorial Service for the taxable year 1979 in the amount of $ 4,100. Petitioner has failed to meet his burden of proving that he is entitled to deduct the claimed losses. Petitioner did not produce any books or records of the partnership, *434 nor did he produce a complete copy of the tax return for Professional Janitorial Service. Petitioner produced a Form K-1 for the taxable year 1979 that indicates that petitioner did not make any capital contribution to Professional Janitorial Service. In an attempt to establish his adjusted basis in the partnership, petitioner testified that he contributed a total of approximately $ 3,000 to Professional Janitorial Service periodically throughout 1977, 1978 and 1978, and he produced cancelled checks totaling $ 931 written in 1977 to the order of James Noel, the owner of Professional Janitorial Service. However, petitioner failed to produce Forms K-1 to establish his contributions to the partnership in 1977 and 1978. Petitioner also admitted that Professional Janitorial Service had earned income in 1977 and that the partnership had incurred losses in 1978. However, petitioner did not produce any evidence to establish the amounts of the income earned and the loss incurred by the partnership in 1977 and 1978. Because petitioner has not established the amount of his contributions to Professional Janitorial Service or the amounts of the partnership's 1977 income or 1978 loss, *435 it is impossible for us to determine the amount of petitioner's adjusted basis, if any, in Professional Janitorial Service, and the deduction claimed for losses attributable to the partnership in 1979 must be disallowed. Partnership Losses Attributable to Tri-State Bedding
Petitioner testified that he became a partner in Tri-State Bedding in 1980. Petitioner claims losses attributable to Tri-State Bedding in the amounts of $ 11,200 and $ 13,400 for the respective taxable years 1980 and 1981. However, the Forms K-1 produced by petitioner to establish his share of the partnership losses attributable to Tri-State Bedding show that petitioner contributed only $ 2,000 in 1980 and $ 2,000 in 1981 to the partnership. Thus, if the Forms K-1 were to be taken at face value, petitioner would at most be entitled to deduct $ 2,000 in 1980 and $ 2,000 in 1981 for losses attributable to Tri-State Bedding. Section 704(d). However, petitioner failed to produce sufficient evidence to establish that he is entitled to any deductions for losses attributable to Tri-State Bedding for the taxable years 1980 and 1981. The Forms K-1 offered to substantiate petitioner's share of losses attributable *436 to Tri-State Bedding for 1980 and 1981 are not the forms originally received by petitioner, but were prepared expressly for use in this case. Petitioner is unsure whether the information contained in the Forms K-1 admitted into evidence is the same as the information contained in the originals. We find that the Forms K-1 offered to substantiate petitioner's share of losses attributable to Tri-State Bedding for the taxable years 1980 and 1981 are unreliable. Petitioner presented one check in the amount of $ 2,000 payable to Maternity Mattress, Inc., dated November 5, 1981, to substantiate his contribution to Tri-State Bedding. However, there is nothing in the record to show that Maternity Mattress, Inc. bears any relationship to Tri-State Bedding. Petitioner has failed to provide credible evidence to establish his contributions to Tri-State Bedding or the amount of loss incurred by the partnership in 1980 and 1981. Accordingly, it is impossible to determine the amount of petitioner's adjusted basis, if any, in the partnership, and the deductions claimed for losses attributable to Tri-State Bedding for the taxable years 1980 and 1981 are disallowed. Partnership Losses *437 Attributable to Augustus Investments, Ltd.
Petitioner claims that he was a partner in Augustus Investments, Ltd., and that he is entitled to deduct losses attributable to the partnership in the amounts of $ 230.90, $ 97.18 and $ 569.51 for the respective years 1979, 1980 and 1981. As proof of his membership in Augustus Investments, Ltd., petitioner offered copies of his Forms K-1 for the taxable years 1983 and 1985. The Forms K-1 offered by petitioner to establish his membership in Augustus Investments, Ltd., are not relevant to the years in issue in this case. Petitioner claims that he initially contributed $ 10,000 to Augustus Investments, Ltd., and subsequently made additional periodic contributions to the partnership totaling approximately $ 10,000. However, petitioner provided no documentary evidence to establish the amount of his contributions or the year or years in which he contributed funds to the partnership. Petitioner produced some summary schedules that he claims reflect the books and records of the partnership. However, petitioner has failed to establish his membership in the partnership or the amount of his adjusted basis in the partnership during the years *438 in issue. Accordingly, the deductions claimed for losses attributable to Augustus Investments, Ltd., for the years in issue are disallowed. Losses Attributable to the Sale of the Carpenter Property
Petitioner acquired a house at 555 Carpenter, Memphis, Tennessee (hereinafter referred to as the Carpenter property), on November 7, 1975. The contract purchase price for the house, $ 9,272.29, was financed in full. Petitioner held the Carpenter property for rent during the years 1975 through 1979. Petitioner sold the Carpenter property in 1979 and claims a loss attributable to the sale. However, petitioner has not indicated the amount of the loss he claims. Nor did he offer sufficient evidence to establish that he incurred a loss in connection with the sale of the property. To evidence the sale of the property, petitioner offered a document entitled "United American Bank Transfer Agreement." The document concerns the transfer of the unpaid balance of indebtedness secured by the property and states that the unpaid balance transferred was $ 6,990.06. Nowhere in the United American Bank Transfer Agreement is there a statement of the sales price of the property. Petitioner *439 has not offered any evidence to establish the sales price of the property. Section 1001 provides that the loss from the sale of property is the excess of of the adjusted basis of the property as provided in section 1011 over the amount realized. Because petitioner has failed to established the sales price of the Carpenter property, it is impossible to determine the amount he realized on its sale. Nor has petitioner established his adjusted basis in the Carpenter property. Section 1011 provides that the adjusted basis for determining gain or loss from the sale or other disposition of property is the basis as determined in section 1012 adjusted as provided in section 1016. Under section 1012, the basis of the Carpenter property was its cost. Section 1016(a)(2) requires an adjustment to basis for depreciation allowed or allowable. Because the Carpenter property was held for the production of income, it was subject to an allowance for depreciation under section 167. Although petitioner established the purchased price of the Carpenter property, he provided no information as the amount *440 of depreciation allowed or allowable for the property. Accordingly, petitioner has failed to establish the adjusted basis of the Carpenter property. Because petitioner has failed to establish the sales price and the adjusted basis of the Carpenter property, it is impossible to determine the amount of his loss, if any, on the sale of the property. Accordingly, the deduction claimed for loss on the sale of the Carpenter property is disallowed. The Silver Option Contract
On September 21, 1979, petitioner purchased an option contract for 5,000 ounces of silver at a unit price of $ 15.90 per ounce. The option contract was purchased from American Gold & Silver Exchange at a cost of $ 6,700. Petitioner did not exercise the option before it expired in March, 1980. Petitioner claims a loss for the taxable year 1980 in the amount of $ 6,700 attributable to his failure to exercise the silver option. Petitioner has established a short-term capital loss in the amount of $ 6,700 attributable to his failure to exercise the option in 1980. Section 1234(a)(1) provides in part that loss *441 attributable to failure to exercise an option to buy or sell property is considered loss from the sale or exchange of property which has the same character as the property to which the option relates has in the hands of the taxpayer (or would have in the hands of the taxpayer if acquired by him). Under section 1221, the silver in this case would have been a capital asset if it had been acquired by petitioner. Section 1234(a)(2) provides that if loss is attributable to failure to exercise an option, the option shall be deemed to have been sold or exchanged on the day it expired. Petitioner bought the option on September 21, 1979, and the option expired six months later in March, 1980. Accordingly, petitioner incurred a short-term capital loss in 1980 attributable to the option contract for 5,000 ounces of silver. Section 1222(2). Section 1211(b) as in effect during the years in issue limited the amount of losses allowable from sales or exchanges of capital assets to the extent of gains from *442 such sales or exchanges plus the lesser of: (1) taxable income for the taxable year, (2) $ 3,000 or (3) the sum of the excess net short-term capital loss over net long-term capital gain and one-half of the excess of the net long-term capital loss over the net short-term capital gain. Petitioner has established no other capital gains or losses, and his taxable income exceeded $ 3,000 for each of the years in issue in this case. Accordingly, petitioner is entitled to a short-term capital loss deduction in the amount of $ 3,000 for the taxable year 1980. Under section 1212(b) petitioner may carry forward the excess of his short-term capital loss to the next year. However, the same limitation in section 1211(b) applies to the carry-forward. Accordingly, petitioner is entitled to a short-term capital loss deduction in the amount of $ 3,000 for the taxable year 1981. Unreimbursed Travel Expenses
Petitioner claims deductions for various business, charitable and medical transportation and moving expenses for the taxable years 1979, 1980 and 1981. However, petitioner has established only that he is entitled to deduct $ 4.76 for unreimbursed business travel and $ 50.40 for medical *443 transportation in 1979. Petitioner claims deductible travel and entertainment expenses from a business trip to Lackland Air Force Base from June 3 through July 7, 1979. Section 162 allows deductions for all ordinary and necessary business expenses, including travel expenses while away from home in pursuit of a trade or business. However, petitioner is not entitled to deduct expenses under section 162 for which he has been or could have been reimbursed. Orvis v. Commissioner,788 F.2d 1406 (9th Cir. 1986), affg. T.C. Memo. 1984-533; Kennelly v. Commissioner,56 T.C. 936 (1971), affd. without published opinion 456 F.2d 1335 (2d Cir. 1972). To deduct unreimbursed travel expenses, petitioner must substantiate the expenses in accordance with the provisions of section 274. Section 274(d), as in effect during the years in issue, provided in pertinent part: (d) SUBSTANTIATION REQUIRED. -- No deduction shall be allowed -- (1) under section *444 162 or 212 for any traveling expense (including meals and lodging while away from home), * * * unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement, (A) the amount of such expense * * *, (B) the time and place of the travel * * *, (C) the business purpose of the expense * * *, and (D) the business relationship to the taxpayer of persons entertained * * * Section 1.274-5(b)(2), Income Tax Regs., provides: (2) Travel. The elements to be proved with respect to an expenditure for travel are -- (i) Amount. Amount of each separate expenditure for traveling away from home, such as cost of transportation or lodging, except that the daily cost of the traveler's own breakfast, lunch, and dinner and of expenditures incidental to such travel may be aggregated, if set forth in reasonable categories, such as for meals, for gasoline and oil, and for taxi fares; (ii) Time. Dates of departure and return for each trip away from home, and number of days away from home spent on business; (iii) Place. *445 Destinations or locality of travel, described by name of city or town or other similar designation; and (iv) Business purpose. Business reason for travel and nature of the business benefit derived or expected to be derived as a result of travel. The rules of substantiation are set forth in section 1.274-5(c), Income Tax Regs.[3]Section 1.274-5(c)(2), Income Tax Regs., requires that to meet the "adequate records" requirements of section 274(d), a taxpayer must maintain an account book, diary, statement of expense or similar record and documentary evidence which, in combination, are sufficient to establish each element of an expenditure specified in section 1.274-5(b), Income Tax Regs. Each recording in the account book, diary, statement of expense or similar record must be made at or near the time of the expenditure. Section 1.274-5(c)(2)(ii), Income Tax Regs.
*446 Section 1.274-5(c)(2)(v), Income Tax Regs., provides that the district director may permit a taxpayer who has substantially complied with the "adequate records" requirements but who has not fully substantiated a particular element of an expenditure to establish that element of the expenditure by evidence that the district director deems adequate. If a taxpayer fails to establish that he has substantially complied with the "adequate records" requirements with respect to an element of an expenditure, he may establish the element by his own statement containing specific information in detail as to such element and by other corroborative evidence sufficient to establish the element. Section 1.274-5(c)(3), Income Tax Regs.
For the taxable year 1979 petitioner has substantiated some of his travel expenses but has failed to show that he was not reimbursed for most of the expenses. The travel voucher submitted by petitioner for the business trip to Lackland Air Force Base reflects complete reimbursement. Petitioner has presented no evidence *447 to establish that he incurred expenses attributable to the trip in excess of the amount he was reimbursed. Accordingly, petitioner is entitled to no deduction for expenses incurred in the trip to Lackland Air Force Base. Petitioner attended a conclave in St. Louis, Missouri, from March 17 through March 22, 1979, as the faculty advisor of the Arnold Air Society and Angel Flight groups at Memphis State University. Petitioner submitted two travel vouchers for the trip to St. Louis, accounting for mileage, hotel, subsistence and registration fees. The expenses claimed in the travel vouchers were $ 200.52 and $ 119.20. Petitioner received reimbursement from Memphis State University for the St. Louis trip in the amount of $ 329.60, an excess of $ 9.88 over the total amount claimed. Because petitioner has not established any unreimbursed travel expenses incurred on his trip to St. Louis, he is not entitled to any deduction for expenses relating thereto. Petitioner traveled from Memphis, Tennessee, to Montgomery, Alabama, from February 9 through February 11, 1979, as the faculty advisor to the Arnold Air Society and Angel Flight groups at Memphis State University. The travel voucher *448 for the Montgomery, Alabama, trips lists total expenses of $ 139.64, including mileage, hotel and subsistence. Petitioner received reimbursement from Memphis State University in the amount of $ 125 for the Montgomery, Alabama trip. Accordingly, petitioner has established that he incurred and is entitled to deduct $ 14.64 in unreimbursed travel expenses for his trip to Montgomery, Alabama, in 1979. However, after applying the $ 9.88 reimbursement petitioner received in excess of the expenses he incurred on his trip to St. Louis, petitioner is permitted to deduct $ 4.76 in unreimbursed business travel expenses for 1979. Petitioner also claims a mileage deduction attributable to 10,784 miles driven for business, charitable and medical purposes in 1979. Petitioner's mileage claims are only estimates because petitioner was unable to locate his calendar/log for 1979. Accordingly, petitioner has failed to meet even the substantial compliance test under section 1.274-5(c)(2)(v), Income Tax Regs., in respect to the mileage claimed for business purposes. Nor did petitioner provide a sufficiently detailed statement and corroborative evidence as permitted by *449 section 1.274-5(c)(3), Income Tax Regs.
Although petitioner need not meet the strict requirements of section 274 to substantiate travel expenses for charitable or medical purposes, nevertheless, petitioner bears the burden of proving that he incurred the expenses claimed. Rule 142(a). Petitioner provided a log/calendar for December, 1979. However, the information contained in the log/calendar for December, 1979 was not sufficient to establish the mileage claimed for that year. Petitioner has not provided sufficient evidence to establish the mileage he claims for 1979. Respondent concedes, however, that petitioner is entitled to a deduction for 560 miles driven for medical purposes in 1979 in the amount of $ 50.40. Petitioner also claims deductions for various travel expenses, including a mileage deductions attributable to 7,548 miles driven for business and charitable purposes in 1980. [3] Petitioner has failed to establish that he is entitled to any deductions for travel in 1980. *450 Petitioner claims that he incurred expenses in connection with a conclave from February 15 to February 18, 1980. However, the calendars that petitioner submitted to substantiate his travel expenses fail to meet the substantiation requirements of section 274 because they show no detail of the expenses incurred in connection with the conclave. Nor did petitioner provide any documentary evidence to substantiate the amounts he claimed. The evidence petitioner provided to substantiate his travel expenses for 1979 shows that petitioner received reimbursement from Memphis State University for expenses incurred in traveling to conclaves. Petitioner has failed to prove that he was not reimbursed or was not entitled to reimbursement for expenses attributable to the February, 1980, conclave. Petitioner claims a business travel expense of $ 448 less reimbursement of $ 356.60 for "TDY to Fairchild 8 June to 14 June." However, petitioner has failed to provide documentary evidence to establish that his expenses were any greater than the amount he was reimbursed. Petitioner claims an unreimbursed business trip to Washington, D.C., from July 8 through July 13, 1980. The calendars petitioner *451 submitted to substantiate his travel expenses fail to meet the adequate records requirement of section 274 because they do not show the business purpose of the trip. Nor has petitioner supplied evidence to explain why his expenses were not reimbursed. Petitioner claims that he drove 200 miles in 1980 for recruiting. However, petitioner has not established that he was not entitled to reimbursement for the claimed recruiting expenses. Petitioner claims a deduction for 1,600 miles driven in 1980 for the benefit of "AAS/ANF Project/Air ROTC." Petitioner estimated that he drove two 20-mile trips per week for 20 weeks for the benefit of the Arnold Air Society and Angel Flight groups. However, the calendars petitioner provided to substantiate his 1980 travel expenses do not support his claim of traveling on two trips a week for 20 weeks. Moreover, petitioner has not established that he was not entitled to reimbursement for his driving expenses incurred on behalf of the Arnold Air Society and Angel Flight groups. Petitioner estimated that he took three trips per week for 25 weeks, driving a total of 3,000 miles for the benefit of the Evening of Soul Foundation in 1980. The regulations *452 under section 170 permit a deductions for miles driven for charitable purposes. Section 1.170A-1(g), Income Tax Regs. Although the recordkeeping requirements to establish deductions under section 170 for charitable travel are not as stringent as the requirements under section 274, petitioner nevertheless bears the burden of proving that he is entitled to a deduction for charitable travel and the amount of the deduction. Rule 142(a). In this case petitioner has failed to provide sufficient evidence to support his estimates of charitable mileage. The calendars petitioner provided to substantiate his 1980 travel expenses do not support a finding that he took three trips a week for 25 weeks in 1980 on behalf of the Evening of Soul Foundation. Although petitioner may be entitled to a deduction for charitable miles driven in 1980, it is impossible to determine or estimate the number of miles he drove for that purpose. Petitioner also claims unspecified deductions for expenses incurred on trips for the benefit of the Evening of Soul Foundation taken February 6, 1980, February *453 9 through February 10, 1980, February 21, 1980, and March 5, 1980. Although the Evening of Soul Foundation is not related to Memphis State University, the documents petitioner provided to establish his expenses for the trips show the following charter parties: Memphis State ROTC (February 6, 1980), Memphis State ROTC (February 9 through February 11, 1980) and Memphis State Speech and Drama Department (February 21, 1980). Petitioner provided no evidence to support expenses incurred on the March 5, 1980, trip. Petitioner has not provided any evidence to establish any expenses incurred on trips on behalf of the Evening of Soul Foundation, nor has petitioner established that he was not reimbursed for the trips. Petitioner claims an additional "moving expenses/business expense" deduction in the amount of $ 32.52 for car rental on September 12, 1980. The calendar provided by petitioner to substantiate his expenses indicates that petitioner left Memphis for Korea on September 12, 1980. However, petitioner provided no evidence to establish the business purpose or to prove the expenditure for the car rental. Petitioner also claims as additional moving expenses the cost of airline tickets *454 for his wife to travel to George Air Force Base in California in July, 1980. Section 217(a) allows a deduction for moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer at a new principal place of work. Under section 217(b)(3)(C) petitioner may deduct expenses incurred in moving the members of his family only if both his former residence and his new residence were the principal place of abode for his dependents. Petitioner's travel orders show that he was at George Air Force Base from July 17, 1980, through August 29, 1980, while en route to Korea. However, petitioner has failed to show that his wife's airline tickets were incurred in connection with her moving to California because he has failed to establish that his wife's principal place of abode in 1980 was at George Air Force Base in California. Petitioner's wife was an elementary school teacher in Memphis, Tennessee, during the school year that lasted from the fall term in 1980 until the summer of 1981. Petitioner moved to Korea in September, 1980, without his wife. *455 We can only conclude that the purpose of the trip to George Air Force Base by petitioner's wife in July, 1980, was to visit rather than to move. Petitioner claims a deduction for 1980 business travel expenses for airline "tickets from George." However, petitioner has failed to substantiate the business purpose of the trip or that he was not reimbursed for his expenses. Because petitioner has failed his burden of proving that he was entitled to the deductions he claims for the taxable year 1980, all the deductions claimed for that year are disallowed. Nor has petitioner met his burden of proving that he is entitled to the deductions he claims for the taxable year 1981. Petitioner claims a deduction for a business trip to Memphis in 1981. However, petitioner failed to produce any evidence to show the business purpose, the dates, the types of expenses or amounts or reimbursement received, if any, for the business trip to Memphis. Petitioner claims moving expenses totaling $ 2,637 incurred in 1981 to move his family to Korea. The evidence does not establish that Korea was the principal place of abode for petitioner's family in 1981 as required by section 217(b)(3)(C). *456 Petitioner was assigned to a one-year tour of duty in Korea in 1980. Petitioner moved to Korea without his family in September, 1980. During 1981 petitioner's wife was an elementary school teacher, and his children were enrolled in school. Petitioner's family arrived in Korea in June, 1981, after the school-year ended and left Korea in August, 1981, to return for the fall school term. The evidence shows that petitioner's family traveled to Korea in 1981 only for vacation purposes and not to move. Petitioner's family spent only two or three months in Korea in 1981 during their summer vacation. The tickets petitioner provided to substantiate their moving expenses were round-trip tickets. Petitioner's family received visas permitting their stay in Korea for only a short period of time. Accordingly, the deduction claimed for expenses incurred in moving petitioner's family to Korea in 1981 is disallowed. Petitioner claims a deduction for air fare in the amount of $ 233, living expenses in the amount of $ 600 and mileage for 3,310 miles driven in connection with his move from Memphis to Sacramento in 1981. However, petitioner was reimbursed for his relocation from Memphis *457 to Sacramento. Petitioner has failed to produce evidence of the amount of his expenses or the amount of reimbursement he received for his moving expenses from Memphis to Sacramento in 1981. Because we cannot determine or estimate the amount of the deduction he may be entitled to claim, we must disallow the deduction for expenses incurred by petitioner in moving from Memphis to Sacramento in 1981. Additions to Tax
Respondent determined that petitioner was liable for additions to tax under section 6651(a), 6643(a) and 6654(a) for each of the years in issue. Petitioner bears the burden of proving that respondent's determinations were incorrect. Rule 142(a). Under section 6651(a) a taxpayer is liable for an addition to tax if he fails to file a required return on the due date unless he shows that his failure was due to reasonable cause and not to willful neglect. The due date for income tax returns made on the basis of a calendar year, as in this case, is on or before the 15th day of April following the close of the calendar year. Section 6072. Petitioner's returns for *458 the taxable years 1979, 1980 and 1981 were due on April 15, 1980, April 15, 1981 and April 15, 1982, respectively. However, none of the returns for the years in issue were received by respondent, nor did petitioner file a request to extend the time for filing his return pursuant to section 6081. Petitioner testified that he filed his returns for the taxable years 1979, 1980 and 1981 sometime in 1982. However, respondent's records reflect that no return was received from petitioner for any of the years in issue, and petitioner failed to produce copies of the returns in issue to support his testimony. Nor did petitioner offer proof that his failure to file the returns was due to reasonable cause. Accordingly, petitioner has failed his burden of proving that he is not liable for the additions to tax under section 6651(a). Section 6653(a) imposes an addition to tax for negligence or intentional disregard of rules or regulations. An addition to tax may be imposed for negligence where the only negligence of the taxpayer giving rise to any part of the deficiency was the failure to file a tax return. Robinson's Dairy, Inc. v. Commissioner,35 T.C. 601, 609 (1961), *459 affd. 302 F.2d 42 (10th Cir. 1962). Because petitioner failed to file his returns for each of the years in issue and failed to show that his failure was for reasonable cause and not willful neglect, petitioner is also liable for additions to tax under section 6653(a) for each of the years in issue. Section 6654(a) imposes an addition to tax on an individual taxpayer for failure to pay estimated income tax. Taxes withheld on wages are deemed to be a payment of estimated tax. Section 6654(g). In this case no taxes from petitioner's wages from the Air Force were withheld during any of the years in issue. Petitioner did not pay estimated income tax for any of the years in issue and is therefore liable for the addition to tax under section 6654(a) for each of the years in issue. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Except as otherwise indicated, all section references are to sections of the Internal Revenue Code in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Petitioner does not allege that M.R. Publishing may have been a small business corporation subject to the provisions of subchapter S of the Internal Revenue Code. ↩
3. Section 179(b) of the Tax Reform Act o 1984, Pub. L. 98-369, 98 Stat. 494, 718, amended the substantiation requirements of section 274(d). The 1984 amendments do not apply in this case because they apply to taxable years beginning after 1984. The Temporary Regulations issued in connection with these amendments apply to taxable years beginning on or after January 1, 1986, and therefore do not apply in this case. Section 1.274-5T(a), Temp. Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). In 1985, Congress repealed the 1984 amendments and the Treasury Regulations issued to carry out the 1984 amendments to section 274(d) and reinstated the pre-1984 substantiation rules for 1985 with respect to away-from-home traveling expenses, expenditures with respect to entertainment, amusement or recreational activities and facilities and gifts. Pub. L. 99-44, 99 Stat. 77. The Committee Reports on the 1985 Act note that the long-standing Treasury regulation on recordkeeping, section 1.274-5, accurately reflects congressional intent as to the documentation that taxpayers are required to maintain. H. Rept. 99-67 (Conf.) (1985), 1985-2 C.B. 359↩, 360 n.2. 3. Petitioner prepared a document listing his business and charitable trips in 1980. The total mileage claimed is 7,458. However, if all the miles for each of the trips claimed are added, the total is 7,748 miles. ↩